# EXHIBIT A



# Tarrant County District Clerk Online
## Thomas A. Wilder, District Clerk

Civil - Case and Transaction Information | 12/28/16 10:20 AM
---|---

Cause Number: 342-289100-16 | Date Filed: 11-22-2016

MIKE FARHAT    | VS |    TEXAS FARMERS INSURANCE COMPANY

Cause of Action: CONTRACT, OTHER FORECLOSURE
Case Status: PENDING

| File Mark | Description | | | Assessed Fee | Credit/Paid Fee |
|---|---|---|---|---|---|
| 11-22-2016 | PLTF'S ORIG PET | N | I | 284.00 | |
| 11-22-2016 | COURT COST (PAID) trans #1 | Y | | | 284.00 |
| 11-22-2016 | COPIES - SENT TO DP | N | | 35.00 | |
| 11-22-2016 | COURT COST (PAID) trans #3 | Y | | | 35.00 |
| 11-22-2016 | CIT-ISSUED ON TEXAS FARMERS INSURANCE COMPANY-On 11/23/2016 | N | Svc | 8.00 | |
| 11-22-2016 | COURT COST (PAID) trans #5 | Y | | | 8.00 |
| 11-22-2016 | CIVIL CASE INFORMATION SHEET | | | | 0.00 |
| 12-06-2016 | AFFDT OF SERVICE-TX FARMERS INS CO | I | | | 0.00 |
| 12-06-2016 | CIT Tr# 5 RET EXEC(TEXAS FARMERS INSURANCE COMPANY ) On 11/29/2016 | I | | | 0.00 |

**District Clerk's Office**

Tom Vandergriff Civil Courts Building

100 N. Calhoun St., 2nd Floor, Fort Worth, Texas 76196, Contact Us

Please send questions and comments regarding the District Clerk web site to District Clerk Webmaster

THE STATE OF TEXAS                          **SERVICE COPY**
DISTRICT COURT, TARRANT COUNTY

*CITATION*                    *Cause No. 342-289100-16*

MIKE FARHAT
VS.
TEXAS FARMERS INSURANCE COMPANY

TO: TEXAS FARMERS INSURANCE COMPANY

B/S CHRIS GRANGER ATTY 15700 LONG VISTA DR AUSTIN, TX 78728- US

You said DEFENDANT are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 342nd District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

MIKE FARHAT

Filed in said Court on November 22nd, 2016 Against
TEXAS FARMERS INSURANCE COMPANY

For suit, said suit being numbered 342-289100-16 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION  a copy of which accompanies this citation.

ADAM D CHILTON
Attorney for MIKE FARHAT Phone No. (817)203-2000
Address       600 N CARROLL AVE STE 100 SOUTHLAKE, TX 76092

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 23rd day of November, 2016.

By _____ Deputy

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

---

OFFICER'S RETURN

Received this Citation on the _____ day of _____, _____ at _____ o'clock __M; and executed at
_____ within the county of _____, State of _____ at _____ o'clock ___M
on the _____ day of _____, _____ by delivering to the within named (Def.): _____
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION
, having first endorsed on same the date of delivery.


Authorized Person/Constable/Sheriff: _____
County of _____ State of_____ By _____ Deputy
Fees $_____
State of _____ County of _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _____ before me this _____ day of _____, _____
to certify which witness my hand and seal of office
(Seal)
                          County of _____, State of _____

## *CITATION*

Cause No. 342-289100-16

MIKE FARHAT

### VS.

TEXAS FARMERS INSURANCE
COMPANY

### ISSUED

This 23rd day of November, 2016

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        STACCI REYNOLDS Deputy

ADAM D CHILTON
Attorney for: MIKE FARHAT
Phone No. (817)203-2000
ADDRESS: 600 N CARROLL AVE STE 100

SOUTHLAKE, TX 76092

## *CIVIL LAW*

*34228910016000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
SERVICE COPY

FILED
TARRANT COUNTY
11/22/2016 2:59:24 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO.** ___342-289100-16___

| | | |
|---|---|---|
| **MIKE FARHAT** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| **TEXAS FARMERS INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mike Farhat, Plaintiff herein, and files this, Plaintiff's Original Petition (the "Petition"), complaining of Texas Farmers Insurance Company (hereinafter "Texas Farmers Insurance"), and for his causes of action would respectfully show unto this Court as follows:

### I.

### PARTIES

1.1    Plaintiff Mike Farhat is an individual resident of Tarrant County, Texas.

1.2    Defendant Texas Farmers Insurance Company is an insurance company authorized to do business in the State of Texas. Texas Farmers Insurance may be served by serving the registered attorney for service, as listed by the Texas Department of Insurance, Chris Granger at 15700 Long Vista Drive, Austin, Texas 78728, or wherever he may be found.

### II.

### VENUE AND JURISDICTION

2.1    Venue is proper in Tarrant County, Texas pursuant to *Texas Civil Practice and Remedies Code* §15.002 as Tarrant County is where all or a substantial parts of the events and omissions giving rise to the claim occurred.

2.2     This Court has jurisdiction over this case as the amount in controversy is within the jurisdictional limits of this Court, exclusive of costs and interest, pursuant to *Texas Government Code* §24.007 *et. seq.*

2.3     Plaintiff seeks monetary relief of $100,000.00 or less and nonmonetary relief.

## III.
## DISCOVERY LEVEL

3.1     Plaintiff has designated Discovery Control Plan Level II pursuant to *Texas Rule of Civil Procedure* 190.3.

## IV.

## FACTUAL BACKGROUND

4.1     Plaintiff Mike Farhat owns a piece of property commonly known as 1060 Harbor Haven St. Southlake, Texas 76092 (hereinafter the "Property"). The Property is approximately 2.6 acres in size.

4.2     The Plaintiff's Property abuts portions of Lake Grapevine, including areas owned by the Army Corps of Engineers.

4.3     On or about November 26, 2015, northern portions of Tarrant County, Texas, including the cities of Southlake and Grapevine, experienced record rainfall. On November 26, 2015, the City of Southlake recorded 2.71 inches of precipitation.  On November 27, 2015, the City of Southlake recorded 3.45 inches of precipitation. On November 28, 2015, the City of Southlake recorded .99 inches of precipitation. A copy of the weather history reports for each of these days is attached hereto as Exhibit "A".

4.4     This level of precipitation resulted in massive flooding in the City of Southlake. Several news publications addressing these floods are attached hereto as Exhibit "B".

4.5    The record level of precipitation caused several inland water sources and surface waters to overflow including Lake Grapevine and the surrounding creeks and waterways that flow into it. This overflow of inland waters and surface waters flowed over the road and caused several major roads in the area, including Dove Road, to close. Additionally, this overflow of inland waters and surface waters flowed onto and partially and/or completely inundated the Property. At one point the water level rose to the bottom of the windows of Plaintiff's home on the Property. Water then entered the home through the exterior bricks and slab and almost completely flooded the first floor of the home. Photographs of the Property after the flooding are attached hereto as Exhibit "C".

4.6    Prior to the flood, Plaintiff purchased a Flood Insurance Policy through Texas Farmers Insurance, Policy Number **87056842942015** with an effective date of November 28, 2015 to November 28, 2016. A copy of this Flood Insurance Policy is attached hereto as Exhibit "D".

4.7    The policy provided coverage for damage caused by "general and temporary conditions of flooding". The policy defined a flood as "A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from: (a) Overflow of inland or tidal waters; (b) Unusual and rapid accumulation of runoff of surface waters from any source; (c) Mudflow."

4.8    Shortly after noting the damage to the Property, Plaintiff contacted Texas Farmers Insurance and made a claim on such policy (Claim No. 370014). Texas Farmers Insurance redirected the claim to Colonial Claims Corporation (hereinafter "Colonial") and sent a claims adjuster, Luke Chen, to the Property to inspect the damage. Neither Texas Farmers Insurance nor Colonial provided Plaintiff with a Proof of Loss form to submit.

4.9     On or about December 21, 2015, Plaintiff received a letter from Texas Farmers Insurance denying his claim against the policy. A copy of this letter is attached hereto as Exhibit "E". The letter cited the language of the policy regarding the definition of a flood and cited the exclusions to such policy. However, the letter did not specify the reason why such claim was denied and neither Texas Farmers Insurance nor Colonial has provided a subsequent explanation for the denial of the claim.

4.10    On or about February 18, 2016, Plaintiff appealed the denial of his claim to the Federal Emergency Management Agency (hereinafter "FEMA"). A copy of this appeal letter is attached hereto as Exhibit "F"

4.11    On or about June 15, 2016, Plaintiff received a letter from FEMA denying his appeal and stating that there was no evidence of a "general and temporary condition of flooding" that would trigger coverage under the Flood Insurance Policy. A copy of this letter is attached hereto as Exhibit "G".

4.12    Plaintiff has been forced to expend substantial sums to mitigate the damages caused by the flood. Plaintiff was forced to hire Mooring Recovery Services, Inc. (hereinafter "Mooring") to provide emergency services to recover, service, and restore the Property. These services included tearing out the carpet and pad in the first floor bedroom, tearing out the insulation on the outside walls of the home, tearing out baseboards in all first floor rooms, tearing out all wet drywall in the home, and packing the items contained in the wine cabinet, bedroom, and garage for temporary storage while the work was being conducted. A copy of the services provided by Mooring along with the invoiced amounts is attached hereto as Exhibit "H".

4.13    The damage to Plaintiff's Property was directly attributable to an "overflow of inland waters" and/or an "unusual and rapid accumulation of runoff or surface water". Portions

of Lake Grapevine and its surrounding creeks and streams overflowed and such water traveled onto and inundated the Property. The Property contains 2.6 acres of "normally dry land area".

4.14    The claim was properly made under the terms of the policy.

## V.

## CAUSES OF ACTION

A.    <u>Declaratory Relief.</u>

5.1    There exists a genuine controversy between the parties herein that would be resolved by the granting of a declaratory judgment.

5.2    Plaintiff Mike Farhat is the person interested under policy number **87056842942015** issued to Mike Farhat with an effective date of November 28, 2015 to November 28, 2016, whose status, rights, or other legal relations are affected by the policy.

5.3    Plaintiff seeks the Court's assistance to resolve the question of whether Plaintiff is entitled to coverage under the above Flood Insurance Policy and therefore entitled flood protection benefits.

5.4    Plaintiff therefore requests that a declaratory judgment be entered as follows:

a.    That the flood that occurred on or about November 28, 2015 met the definition of an insurable event under the aforementioned Flood Insurance Policy.

b.    That Texas Farmers Insurance owes flood insurance benefits to Plaintiff.

B.    <u>Insurance Code Violations.</u>

5.5    Defendant Texas Farmers Insurance was notified of the flood in question sometime before December 21, 2015.

5.6    Despite the fact that all conditions precedent to Defendant Texas Farmers

Insurance's obligation to pay Plaintiff's losses under the Flood Insurance Policy were performed and did occur, Defendant Texas Farmers Insurance fails and refuses to pay Plaintiff's claim.

5.7    Defendant Texas Farmers Insurance's delay in paying the claim is unreasonable, unlawful, actionable, and the producing and proximate cause of further harm suffered by Plaintiff.

C.    Unfair Claims Settlement Practices

5.8    After having received notice of Plaintiff's losses which are covered by the Flood Insurance Policy contract, Defendant Texas Farmers Insurance engaged in unfair settlement practices as set forth in §541.060 of the Insurance Code and §17.46(b) of the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), which include but are not limited to the following:

A.    **Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Plaintiff's claim once the Defendant Texas Farmers Insurance's liability became reasonably clear;**

B.    **Refusing to pay the claim without first conducting a reasonable investigation of the matter;**

C.    **Failing to affirm or deny coverage within a reasonable time;**

D.    **Making misrepresentations relating to coverage of the insurance contract made the basis of this suit.**

5.9    Plaintiff will show that these acts and/or omissions on Defendant Texas Farmers Insurance's part were done knowingly, that is with an actual awareness of the falsity, unfairness or deception of the conduct described. As a result, Plaintiff is entitled to additional damages of up to three times the sum of actual damages suffered.

D.    Breach of Duty of Good Faith and Fair Dealing

5.10    From and after the time Plaintiff's claim was presented to Defendant, Defendant's

liability to pay the claim in accordance with the terms of the Flood Insurance Policy, was reasonably clear.

5.11    Despite there being no basis whatsoever on which the Defendant would have relied to deny payment of the claim, Defendant refused to accept the claim and pay Plaintiff policy benefits.

5.12    Once Defendant was provided all the relevant documentation, Defendant knew or should have known, by the existence of reasonable diligence, that its liability was reasonably clear.

5.13    Plaintiff will show the Defendant failed to conduct a reasonable and proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as excuses to avoid paying a valid claim.

5.14    Consequently, Defendant breached its duty to deal fairly and in good faith with Plaintiff. Defendant's breach was a proximate cause of the losses, expenses and damages by Plaintiff.

5.15    This breach of duty by Defendant was aggravated by the kind of gross negligence for which the law allows the imposition of exemplary damages. Defendant's conduct involved an extreme degree of risk of potential harm to Plaintiff and despite Defendant being actually and subjectively aware of the risk involved, Defendant proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff. As a result, Plaintiff seeks exemplary damages in an amount to be assessed by the trier of fact.

E.    Failure to Comply with Prompt Payment Statute

5.16    Sometime before December 21, 2015, Plaintiff fully informed Defendant of all the facts relating to Plaintiff's claim under the Flood Insurance Policy.

5.17    Defendant acknowledged receipt of the claim on December 21, 2015, when they sent Plaintiff a letter denying such claim.

5.18    Despite being provided with all information necessary to pay the claim, Defendant failed and refuses to pay the claim.

5.19    Although Defendant received all items requested to process Plaintiff's claim, more than 60 days have elapsed.

5.20    Accordingly, Plaintiff is entitled to recover reasonable attorney's fees and the additional sum of 18% per annum on Plaintiff's claim from December 21, 2015 until the date of judgment pursuant to Ins. C. §542.060.

## VI.

### ATTORNEY'S FEES

6.1    Because of the conduct of Defendant Texas Farmers Insurance, Plaintiff has been compelled to engage the services of an attorney to prosecute this action.

6.2    As a result, Plaintiff is entitled to recover a reasonable sum for attorney's fees pursuant to the *Texas Insurance Code* and the *Texas Deceptive Trade Practices Act.*

## VII.

### REQUEST FOR DISCLOSURE

7.1    Pursuant to Rule 194 of the *Texas Rules of Civil Procedure,* Defendant is requested to disclose, within fifty (50) days of the service of this request, the information or material described in Rule 194.2 of the *Texas Rules of Civil Procedure.* Copies of documents and other tangible items should be served with the response. TEX. R. CIV. P. 194.4. No objection or assertion of work product is permitted to this request. TEX. R. CIV. P. 194.5. This request for disclosure and discovery is continuing in nature and should Defendant, at a later date, come in

the possession, custody, or control of any of the information, documents, or materials requested herein, then such should be produced to Plaintiff's undersigned attorneys.

## VIII.

### CONDITIONS PRECEDENT

8.1    All conditions precedent required by Plaintiff have been performed or have occurred.

WHERETOFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer herein and that upon final trial Plaintiff be awarded a judgment against Defendant for the following:

1.    A declaratory judgment be entered declaring:

    a.    That the flood that occurred on or about November 28, 2015 met the definition of an insurable event under the aforementioned Flood Insurance Policy.

    b.    That Texas Farmers Insurance owes flood insurance benefits to Plaintiff.

2.    Actual damages including mental anguish suffered by Plaintiff, as set out in this Petition, in an amount within the jurisdictional limits of the Court;

3.    Exemplary damages as provided by law and/or additional damages up to three times the actual damages, as found by the trier of fact;

4.    Interest in the amount of 18% per annum from December 21, 2015 until the date of judgment on the Plaintiff's claim;

5.    Reasonable attorney's fees;

6.    Costs of suit;

7.    Prejudgment interest and post-judgment interest as allowed by law; and

8.    All other and further relief to which Plaintiff may be justly entitled, whether at law or in equity.

Respectfully Submitted,


/s/ Adam D. Chilton
Andrew L. Wambsganss SBN 20831250
Email: andy@wambganss.com
Misty M. Pratt, SBN 24027749
Email: mpratt@brownpruitt.com
Adam D. Chilton, SBN 24092255
Email: achilton@brownpruitt.com
Brown Pruitt Wambsganss Ferrill & Dean, P.C.
600 N. Carroll Avenue, Suite 100
Southlake, Texas 76092
Telephone: 817-203-2000
Facsimile: 817-796-2799

**ATTORNEYS FOR PLAINTIFF
MIKE FARHAT**

report this ad

# Irving, TX 🏠
Dallas-Fort Worth International                                  ⊙ 2:25 PM CST on February 18, 2016 (GMT -0600)

## Weather History for KDFW – November, 2015

November

28

2015

View
Saturday, November 28, 2015

| Daily | Weekly | Monthly | Custom |

|  | Actual | Average | Record |
|---|---|---|---|
| **Temperature** | | | |
| Mean Temperature | 40 °F | 52 °F | |
| Max Temperature | 42 °F | 62 °F | 81 °F (1949) |
| Min Temperature | 38 °F | 41 °F | 24 °F (1976) |
| **Degree Days** | | | |
| Heating Degree Days | 25 | 14 | |
| Month to date heating degree days | 169 | 253 | |
| Since 1 July heating degree days | 174 | 325 | |
| Cooling Degree Days | 0 | 0 | |

https://www.wunderground.com/history/airport/KDFW/2015/11/28/Da...TX&req_statename=&reqdb.zip=76092&reqdb.magic=2&req

**EXHIBIT**

**A**

| | | | |
|---|---|---|---|
| Month to date cooling degree days | 25 | 27 | |
| Year to date cooling degree days | 3001 | 2750 | |
| Moisture | | | |
| Dew Point | 36 °F | | |
| Average Humidity | 84 | | |
| Maximum Humidity | 92 | | |
| Minimum Humidity | 76 | | |
| Precipitation | | | |
| Precipitation | 0.99 in | 0.08 in | 1.68 in (1919) |
| Month to date precipitation | 8.98 | 2.56 | |
| Year to date precipitation | 57.90 | 33.44 | |
| Snow | | | |
| Snow | 0.00 in | 0.00 in | T in (2001) |
| Month to date snowfall | 0.0 | 0.0 | |
| Since 1 July snowfall | 0.0 | 0.0 | |
| Since 1 September snowfall | 0.0 | 0.0 | |
| Snow Depth | 0.00 in | | |
| Sea Level Pressure | | | |
| Sea Level Pressure | 30.23 in | | |
| Wind | | | |
| Wind Speed | 14 mph (NNW) | | |
| Max Wind Speed | 21 mph | | |
| Max Gust Speed | 24 mph | | |
| Visibility | 8 miles | | |
| Events | Rain | | |

T = Trace of Precipitation, MM = Missing Value                    Source: NWS Daily Summary

Weather History for Dallas/Ft Worth, TX | Weather Underground

2/18/16, 2:30 PM

## Daily Weather History Graph



report this ad | why ads?

## Search for Another Location

Airport or City:

KDFW

**Submit**

## Trip Planner

Search our weather history database for the weather conditions in past years. The results will help you decide how hot, cold, wet, or windy it might be!

Date:

November

28

**Submit**

report this ad | why ads?

## Astronomy

| Nov. 28, 2015 | Rise | Set |
|---|---|---|
| Actual Time | 7:10 AM CST | 5:21 PM CST |
| Civil Twilight | 6:43 AM CST | 5:48 PM CST |
| Nautical Twilight | 6:12 AM CST | 6:19 PM CST |
| Astronomical Twilight | 5:43 AM CST | 6:48 PM CST |
| Moon | 8:24 PM CST (11/28) | 9:35 AM CST (11/28) |
| Length of Visible Light | 11h 05m | |
| Length of Day | 10h 11m | |

Waning Gibbous, 90% of the Moon is Illuminated

| Nov 28 | Dec 3 | Dec 11 | Dec 18 | Dec 25 |
|---|---|---|---|---|
| Waning Gibbous | Last Quarter | New | First Quarter | Full |

report this ad | why ads?

## Hourly Weather History & Observations

| Time (CST) | Temp. | Windchill | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12:29 AM | 39.0 °F | 29.9 °F | 36.0 °F | 89% | 30.23 in | 4.0 mi | NNW | 17.3 mph | - | 0.16 in | |
| 12:53 AM | 39.0 °F | 30.6 °F | 36.0 °F | 89% | 30.24 in | 9.0 mi | NNW | 15.0 mph | - | 0.18 in | |

Weather History for Dallas/Ft Worth, TX | Weather Underground                                    2/18/16, 2:30 PM

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1:38 AM | 37.9 °F | 29.6 °F | 35.1 °F | 89% | 30.22 in | 3.0 mi | NNW | 13.8 mph | – | 0.10 in | ſ |
| 1:51 AM | 37.4 °F | 28.2 °F | 35.6 °F | 93% | 30.22 in | 7.0 mi | NNW | 16.1 mph | – | 0.13 in | ſ |
| 1:53 AM | 37.9 °F | 29.2 °F | 35.1 °F | 89% | 30.22 in | 6.0 mi | NNW | 15.0 mph | – | 0.13 in | ſ |
| 2:33 AM | 37.9 °F | 29.6 °F | 35.1 °F | 89% | 30.22 in | 9.0 mi | NNW | 13.8 mph | – | 0.08 in | ſ |
| 2:53 AM | 37.9 °F | 28.5 °F | 35.1 °F | 89% | 30.21 in | 5.0 mi | NNW | 17.3 mph | – | 0.11 in | ſ |
| 3:09 AM | 37.9 °F | 28.9 °F | 35.1 °F | 89% | 30.20 in | 6.0 mi | NNW | 16.1 mph | – | 0.03 in | ſ |
| 3:27 AM | 37.9 °F | 29.6 °F | 35.1 °F | 89% | 30.20 in | 8.0 mi | NNW | 13.8 mph | – | 0.04 in | ſ |
| 3:51 AM | 37.9 °F | 29.2 °F | 35.1 °F | 89% | 30.19 in | 10.0 mi | North | 15.0 mph | – | 0.04 in | ſ |
| 4:05 AM | 37.9 °F | 29.2 °F | 35.1 °F | 89% | 30.17 in | 2.0 mi | North | 15.0 mph | – | 0.03 in | ſ |
| 4:08 AM | 37.9 °F | 30.0 °F | 35.1 °F | 89% | 30.17 in | 1.8 mi | North | 12.7 mph | – | 0.06 in | ſ |
| 4:53 AM | 37.9 °F | 28.9 °F | 36.0 °F | 93% | 30.21 in | 1.0 mi | NNW | 16.1 mph | – | 0.26 in | ſ |
| 4:58 AM | 39.0 °F | 31.4 °F | 36.0 °F | 89% | 30.20 in | 5.0 mi | NNW | 12.7 mph | – | 0.00 in | ſ |
| 5:53 AM | 37.9 °F | 28.5 °F | 35.1 °F | 89% | 30.23 in | 7.0 mi | NW | 17.3 mph | – | 0.11 in | ſ |
| 6:07 AM | 37.9 °F | 29.2 °F | 35.1 °F | 89% | 30.23 in | 8.0 mi | NW | 15.0 mph | – | 0.01 in | ſ |
| 6:22 AM | 37.9 °F | 28.5 °F | 35.1 °F | 89% | 30.22 in | 2.5 mi | NNW | 17.3 mph | – | 0.05 in | ſ |
| 6:24 AM | 37.9 °F | 28.5 °F | 35.1 °F | 89% | 30.22 in | 3.0 mi | NNW | 17.3 mph | – | 0.05 in | ſ |
| 6:53 AM | 37.9 °F | 29.6 °F | 35.1 °F | 89% | 30.22 in | 2.0 mi | North | 13.8 mph | – | 0.11 in | ſ |
| 7:53 AM | 37.9 °F | 29.6 °F | 35.1 °F | 89% | 30.23 in | 6.0 mi | NNW | 13.8 mph | – | 0.09 in | ſ |

| Time | Temp | Dew | Heat | Humidity | Pressure | Vis | Dir | Wind | | Precip |
|---|---|---|---|---|---|---|---|---|---|---|
| 8:53 AM | 39.0 °F | 29.9 °F | 35.1 °F | 86% | 30.25 in | 10.0 mi | NNW | 17.3 mph | -- | 0.01 in |
| 9:53 AM | 39.0 °F | 29.9 °F | 35.1 °F | 86% | 30.26 in | 10.0 mi | NNW | 17.3 mph | -- | 0.00 in |
| 10:10 AM | 39.0 °F | 29.9 °F | 35.1 °F | 86% | 30.26 in | 10.0 mi | NNW | 17.3 mph | -- | 0.00 in |
| 10:53 AM | 39.9 °F | 32.1 °F | 36.0 °F | 86% | 30.26 in | 10.0 mi | NNW | 13.8 mph | -- | 0.00 in |
| 11:11 AM | 39.9 °F | 32.5 °F | 36.0 °F | 86% | 30.25 in | 10.0 mi | NNW | 12.7 mph | -- | 0.00 in |
| 11:53 AM | 39.9 °F | 31.8 °F | 35.1 °F | 83% | 30.25 in | 10.0 mi | North | 15.0 mph | -- | 0.00 in |
| 12:53 PM | 39.9 °F | 31.4 °F | 35.1 °F | 83% | 30.23 in | 10.0 mi | North | 16.1 mph | -- | N/A |
| 1:30 PM | 41.0 °F | 33.9 °F | 35.1 °F | 79% | 30.22 in | 10.0 mi | NNW | 12.7 mph | -- | N/A |
| 1:53 PM | 41.0 °F | 33.5 °F | 36.0 °F | 82% | 30.22 in | 10.0 mi | NNW | 13.8 mph | -- | N/A |
| 2:53 PM | 42.1 °F | 36.1 °F | 36.0 °F | 79% | 30.20 in | 10.0 mi | NNW | 10.4 mph | -- | N/A |
| 3:53 PM | 42.1 °F | 34.5 °F | 37.0 °F | 82% | 30.22 in | 10.0 mi | NNW | 15.0 mph | -- | 0.00 in |
| 4:53 PM | 42.1 °F | 34.5 °F | 37.0 °F | 82% | 30.20 in | 10.0 mi | NNW | 15.0 mph | -- | 0.00 in |
| 5:53 PM | 42.1 °F | 34.5 °F | 37.0 °F | 82% | 30.21 in | 10.0 mi | NNW | 15.0 mph | -- | N/A |
| 6:53 PM | 42.1 °F | 36.1 °F | 36.0 °F | 79% | 30.22 in | 10.0 mi | NNW | 10.4 mph | -- | N/A |
| 7:53 PM | 42.1 °F | 35.7 °F | 37.0 °F | 82% | 30.22 in | 10.0 mi | NNW | 11.5 mph | -- | 0.00 in |
| 8:53 PM | 42.1 °F | 35.7 °F | 37.0 °F | 82% | 30.24 in | 10.0 mi | NNW | 11.5 mph | -- | 0.00 in |
| 9:32 PM | 42.1 °F | 34.5 °F | 37.0 °F | 82% | 30.25 in | 10.0 mi | NW | 15.0 mph | -- | N/A |
| 9:53 PM | 42.1 °F | 35.7 °F | 37.0 °F | 82% | 30.26 in | 10.0 mi | NW | 11.5 mph | -- | N/A |

2/18/16, 2:30 PM

| PM | ... | ... | ... | ... | ... | ... | ... | ... | ... |
|---|---|---|---|---|---|---|---|---|---|
| 10:53 PM | 41.0 °F | 33.1 °F | 36.0 °F | 82% | 30.26 in | 10.0 mi | North | 15.0 mph | - | N/A |
| 11:17 PM | 41.0 °F | 32.8 °F | 36.0 °F | 82% | 30.24 in | 10.0 mi | North | 16.1 mph | - | N/A |
| 11:27 PM | 39.9 °F | 32.5 °F | 36.0 °F | 86% | 30.24 in | 10.0 mi | NNW | 12.7 mph | - | N/A |
| 11:53 PM | 39.9 °F | 31.8 °F | 36.0 °F | 86% | 30.23 in | 10.0 mi | North | 15.0 mph | - | N/A |

report this ad

report this ad

# Irving, TX 
Dallas-Fort Worth International                ⊘ 2:30 PM CST on February 18, 2016 (GMT -0600)

## Weather History for KDFW - November, 2015

November

27

2015

**View**
Friday, November 27, 2015

| **Daily** | Weekly | Monthly | Custom |
| --- | --- | --- | --- |

|  | Actual | Average | Record |
| --- | --- | --- | --- |
| Temperature |  |  |  |
| Mean Temperature | 55 °F | 52 °F |  |
| Max Temperature | 70 °F | 62 °F | 82 °F (1905) |
| Min Temperature | 39 °F | 42 °F | 21 °F (1938) |
| Degree Days |  |  |  |
| Heating Degree Days | 10 | 13 |  |
| Month to date heating degree days | 144 | 239 |  |
| Since 1 July heating degree days | 149 | 311 |  |
| Cooling Degree Days | 0 | 0 |  |

2/18/16, 2:30 PM

| | | | |
|---|---|---|---|
| Month to date cooling degree days | 25 | 27 | |
| Year to date cooling degree days | 3001 | 2750 | |
| Growing Degree Days | 4 (Base 50) | | |
| Moisture | | | |
| Dew Point | 46 °F | | |
| Average Humidity | 88 | | |
| Maximum Humidity | 93 | | |
| Minimum Humidity | 83 | | |
| Precipitation | | | |
| Precipitation | 3.45 in | 0.07 in | 3.45 in (2015) |
| Month to date precipitation | 7.99 | 2.48 | |
| Year to date precipitation | 56.91 | 33.36 | |
| Snow | | | |
| Snow | 0.00 in | 0.00 in | T in (1918) |
| Month to date snowfall | 0.0 | 0.0 | |
| Since 1 July snowfall | 0.0 | 0.0 | |
| Since 1 September snowfall | 0.0 | 0.0 | |
| Snow Depth | 0.00 in | | |
| Sea Level Pressure | | | |
| Sea Level Pressure | 30.17 in | | |
| Wind | | | |
| Wind Speed | 16 mph (NNW) | | |
| Max Wind Speed | 26 mph | | |
| Max Gust Speed | 31 mph | | |
| Visibility | 5 miles | | |
| Events | Rain , Thunderstorm | | |

T = Trace of Precipitation, MM = Missing Value               Source: NWS Daily Summary

## Daily Weather History Graph



report this ad | why ads?

## Search for Another Location

Airport or City:

KDFW

**Submit**

## Trip Planner

Search our weather history database for the weather conditions in past years. The results will help you decide how hot, cold, wet, or windy it might be!

Date:

November

27

**Submit**

report this ad | why ads?

## Astronomy

| Nov. 27, 2015 | Rise | Set |
|---|---|---|
| Actual Time | 7:09 AM CST | 5:22 PM CST |
| Civil Twilight | 6:42 AM CST | 5:48 PM CST |
| Nautical Twilight | 6:12 AM CST | 6:19 PM CST |
| Astronomical Twilight | 5:42 AM CST | 6:48 PM CST |
| Moon | 7:26 PM CST (11/27) | 8:40 AM CST (11/27) |
| Length of Visible Light | 11h 06m | |
| Length of Day | 10h 12m | |

Waning Gibbous, 96% of the Moon is illuminated

| Nov 27 | Dec 3 | Dec 11 | Dec 18 | Dec 25 |
|---|---|---|---|---|
| Waning Gibbous | Last Quarter | New | First Quarter | Full |

report this ad | why ads?

## Hourly Weather History & Observations

| Time (CST) | Temp. | Windchill | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip |
|---|---|---|---|---|---|---|---|---|---|---|
| 12:03 AM | 69.1 °F | - | 66.9 °F | 93% | 30.07 in | 2.0 mi | ESE | 12.7 mph | - | 0.09 in |

Weather History for Dallas/Ft Worth, TX | Weather Underground                                         2/18/16, 2:30 PM

| 12:13 AM | 69.1 °F | – | 66.9 °F | 93% | 30.07 in | 1.8 mi | ESE | 9.2 mph | – | 0.17 in |
| 12:49 AM | 69.8 °F | – | 66.2 °F | 88% | 30.06 in | 2.0 mi | NW | 8.1 mph | – | 0.69 in |
| 12:53 AM | 69.1 °F | – | 66.9 °F | 93% | 30.04 in | 1.2 mi | NW | 6.9 mph | – | 0.74 in |
| 1:12 AM | 69.1 °F | – | 66.9 °F | 93% | 30.06 in | 1.2 mi | NNW | 6.9 mph | – | 0.35 in |
| 1:18 AM | 69.1 °F | – | 66.9 °F | 93% | 30.06 in | 2.0 mi | Calm | Calm | – | 0.41 in |
| 1:33 AM | 69.1 °F | – | 66.9 °F | 93% | 30.06 in | 3.0 mi | South | 5.8 mph | – | 0.43 in |
| 1:53 AM | 69.1 °F | – | 66.9 °F | 93% | 30.05 in | 10.0 mi | South | 4.6 mph | – | 0.43 in |
| 2:04 AM | 69.1 °F | – | 66.9 °F | 93% | 30.06 in | 7.0 mi | South | 6.9 mph | – | 0.01 in |
| 2:30 AM | 70.0 °F | – | 68.0 °F | 93% | 30.05 in | 10.0 mi | SSE | 9.2 mph | – | 0.02 in |
| 2:42 AM | 70.0 °F | – | 68.0 °F | 93% | 30.05 in | 10.0 mi | South | 11.5 mph | – | 0.02 in |
| 2:53 AM | 70.0 °F | – | 68.0 °F | 93% | 30.04 in | 10.0 mi | South | 12.7 mph | – | 0.02 in |
| 3:33 AM | 61.0 °F | – | 57.9 °F | 90% | 30.06 in | 7.0 mi | NW | 24.2 mph | – | 0.01 in |
| 3:43 AM | 57.0 °F | – | 55.0 °F | 93% | 30.07 in | 2.0 mi | NW | 24.2 mph | – | 0.06 in |
| 3:48 AM | 55.4 °F | – | 53.6 °F | 94% | 30.07 in | 4.0 mi | NW | 20.7 mph | – | 0.07 in |
| 3:53 AM | 55.9 °F | – | 54.0 °F | 93% | 30.06 in | 3.0 mi | WNW | 20.7 mph | – | 0.08 in |
| 4:53 AM | 50.0 °F | – | 48.0 °F | 93% | 30.09 in | 4.0 mi | NNW | 16.1 mph | – | 0.32 in |

Weather History for Dallas/Ft Worth, TX | Weather Underground                    2/18/16, 2:30.PM

| 5:18 AM | 50.0 °F | – | 46.9 °F | 89% | 30.11 in | 7.0 mi | NNW | 17.3 mph | – | 0.03 in |
|---|---|---|---|---|---|---|---|---|---|---|
| 5:53 AM | 48.9 °F | – | 46.0 °F | 90% | 30.10 in | 2.5 mi | NNW | 15.0 mph | – | 0.15 in |
| 6:13 AM | 48.0 °F | – | 46.0 °F | 93% | 30.13 in | 5.0 mi | NNW | 13.8 mph | – | 0.09 in |
| 6:45 AM | 48.0 °F | – | 46.0 °F | 93% | 30.15 in | 10.0 mi | NNW | 15.0 mph | – | 0.10 in |
| 6:53 AM | 48.0 °F | – | 46.0 °F | 93% | 30.15 in | 8.0 mi | NNW | 16.1 mph | – | 0.10 in |
| 7:09 AM | 46.9 °F | – | 45.0 °F | 93% | 30.17 in | 2.5 mi | NNW | 15.0 mph | – | 0.00 in |
| 7:27 AM | 46.9 °F | – | 44.1 °F | 90% | 30.18 in | 6.0 mi | NNW | 16.1 mph | – | 0.00 in |
| 7:53 AM | 46.0 °F | 39.6 °F | 44.1 °F | 93% | 30.19 in | 6.0 mi | NNW | 15.0 mph | – | 0.00 in |
| 8:19 AM | 46.0 °F | 39.6 °F | 43.0 °F | 89% | 30.20 in | 2.5 mi | NNW | 15.0 mph | – | 0.01 in |
| 8:29 AM | 46.0 °F | 39.3 °F | 44.1 °F | 93% | 30.20 in | 4.0 mi | NNW | 16.1 mph | – | 0.02 in |
| 8:53 AM | 45.0 °F | 37.1 °F | 42.1 °F | 90% | 30.19 in | 8.0 mi | NNW | 19.6 mph | – | 0.02 in |
| 9:53 AM | 44.1 °F | 35.9 °F | 41.0 °F | 89% | 30.23 in | 8.0 mi | NNW | 19.6 mph | – | 0.01 in |
| 10:41 AM | 44.1 °F | 37.1 °F | 39.9 °F | 85% | 30.24 in | 4.0 mi | North | 15.0 mph | – | 0.04 in |
| 10:53 AM | 44.1 °F | 35.9 °F | 39.9 °F | 85% | 30.23 in | 9.0 mi | NNW | 19.6 mph | – | 0.04 in |
| 11:04 AM | 44.1 °F | 36.8 °F | 41.0 °F | 89% | 30.24 in | 10.0 mi | North | 16.1 mph | – | 0.00 in |
| 11:10 AM | 44.1 °F | 36.5 °F | 39.9 °F | 85% | 30.24 in | 4.0 mi | NNW | 17.3 mph | – | 0.01 in |
| 11:24 AM | 43.0 °F | 35.4 °F | 39.9 °F | 89% | 30.24 in | 4.0 mi | NNW | 16.1 mph | – | 0.02 in |
| 11:53 AM | 43.0 °F | 34.8 °F | 39.9 °F | 89% | 30.22 in | 4.0 mi | North | 18.4 mph | – | 0.03 in |

Weather History for Dallas/Ft Worth, TX | Weather Underground                                    2/18/16, 2:30 PM

PM

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 12:53 PM | 44.1 °F | 36.8 °F | 39.9 °F | 85% | 30.22 in | 4.0 mi | NNW | 16.1 mph | - | 0.04 in |
| 1:53 PM | 43.0 °F | 35.1 °F | 39.9 °F | 89% | 30.20 in | 5.0 mi | NNW | 17.3 mph | - | 0.00 in |
| 2:08 PM | 42.1 °F | 33.1 °F | 37.9 °F | 85% | 30.21 in | 1.5 mi | NNW | 20.7 mph | - | 0.02 in |
| 2:27 PM | 42.1 °F | 33.9 °F | 39.0 °F | 89% | 30.21 in | 3.0 mi | NNW | 17.3 mph | - | 0.12 in |
| 2:53 PM | 41.0 °F | 32.2 °F | 37.9 °F | 89% | 30.21 in | 4.0 mi | NNW | 18.4 mph | - | 0.13 in |
| 3:53 PM | 41.0 °F | 33.1 °F | 37.9 °F | 89% | 30.22 in | 10.0 mi | NNW | 15.0 mph | - | 0.00 in |
| 4:12 PM | 41.0 °F | 33.1 °F | 37.9 °F | 89% | 30.21 in | 10.0 mi | North | 15.0 mph | - | 0.00 in |
| 4:53 PM | 41.0 °F | 32.8 °F | 37.0 °F | 86% | 30.21 in | 4.0 mi | North | 16.1 mph | - | 0.05 in |
| 5:53 PM | 41.0 °F | 32.2 °F | 37.0 °F | 86% | 30.22 in | 9.0 mi | North | 18.4 mph | - | 0.27 in |
| 6:43 PM | 41.0 °F | 31.1 °F | 37.0 °F | 86% | 30.24 in | 8.0 mi | North | 23.0 mph | 26.5 mph | 0.03 in |
| 6:53 PM | 39.9 °F | 30.8 °F | 37.0 °F | 89% | 30.23 in | 6.0 mi | North | 18.4 mph | - | 0.05 in |
| 7:46 PM | 39.9 °F | 32.9 °F | 37.0 °F | 89% | 30.24 in | 5.0 mi | North | 11.5 mph | - | 0.14 in |
| 7:53 PM | 39.9 °F | 32.5 °F | 37.9 °F | 93% | 30.25 in | 5.0 mi | NNW | 12.7 mph | - | 0.16 in |
| 8:35 PM | 39.9 °F | 31.8 °F | 37.0 °F | 89% | 30.22 in | 2.5 mi | North | 15.0 mph | - | 0.14 in |
| 8:50 PM | 39.2 °F | 32.5 °F | 37.4 °F | 93% | 30.25 in | 4.0 mi | NNW | 10.4 mph | - | 0.24 in |
| 8:53 PM | 39.9 °F | 33.4 °F | 37.9 °F | 93% | 30.25 in | 4.0 mi | NNW | 10.4 mph | - | 0.25 in |
| 9:03 PM | 39.9 °F | 31.4 °F | 37.0 °F | 89% | 30.24 in | 5.0 mi | NNW | 16.1 mph | - | 0.01 in |
| 9:53 | 39.9 °F | 31.8 °F | 37.0 °F | 89% | 30.25 in | 5.0 mi | NNW | 15.0 mph | - | 0.20 in |

| PM | 39.9 | 30.8 °F | 37.0 °F | 89% | 30.25 in | 5.0 ml | NNW | 18.0 mph | | 0.19 in |
|---|---|---|---|---|---|---|---|---|---|---|
| 10:53 PM | 39.9 °F | 30.8 °F | 37.0 °F | 89% | 30.25 in | 4.0 ml | NNW | 18.4 mph | 25.3 mph | 0.19 in |
| 11:16 PM | 39.9 °F | 32.1 °F | 37.0 °F | 89% | 30.24 in | 4.0 ml | NNW | 13.8 mph | - | 0.10 in |
| 11:40 PM | 39.0 °F | 31.0 °F | 36.0 °F | 89% | 30.24 in | 7.0 ml | NNW | 13.8 mph | - | 0.15 in |
| 11:53 PM | 39.0 °F | 30.6 °F | 36.0 °F | 89% | 30.23 in | 4.0 ml | NNW | 15.0 mph | - | 0.19 in |

||

report this ad

report this ad

# Irving, TX 🏠
### Dallas-Fort Worth International                    ⊘ 2:30 PM CST on February 18, 2016 (GMT -0600)

## Weather History for KDFW - November, 2015

November

26

2015

**View**
Thursday, November 26, 2015

| Daily | Weekly | Monthly | Custom |
| --- | --- | --- | --- |

|  | Actual | Average | Record |
| --- | --- | --- | --- |
| **Temperature** | | | |
| Mean Temperature | 69 °F | 52 °F | |
| Max Temperature | 72 °F | 62 °F | 88 °F (1965) |
| Min Temperature | 66 °F | 42 °F | 23 °F (1993) |
| **Degree Days** | | | |
| Heating Degree Days | 0 | 13 | |
| Month to date heating degree days | 134 | 226 | |
| Since 1 July heating degree days | 139 | 298 | |
| Cooling Degree Days | 4 | 0 | |

| | | | |
|---|---|---|---|
| Month to date cooling degree days | 25 | 27 | |
| Year to date cooling degree days | 3001 | 2750 | |
| Growing Degree Days | 19 (Base 50) | | |
| Moisture | | | |
| Dew Point | 65 °F | | |
| Average Humidity | 82 | | |
| Maximum Humidity | 90 | | |
| Minimum Humidity | 73 | | |
| Precipitation | | | |
| Precipitation | 2.71 in | 0.08 in | 3.06 in (1914) |
| Month to date precipitation | 4.54 | 2.41 | |
| Year to date precipitation | 53.46 | 33.29 | |
| Snow | | | |
| Snow | 0.00 in | 0.00 in | T in (1918) |
| Month to date snowfall | 0.0 | 0.0 | |
| Since 1 July snowfall | 0.0 | 0.0 | |
| Since 1 September snowfall | 0.0 | 0.0 | |
| Snow Depth | 0.00 in | | |
| Sea Level Pressure | | | |
| Sea Level Pressure | 30.09 in | | |
| Wind | | | |
| Wind Speed | 13 mph (SSE) | | |
| Max Wind Speed | 22 mph | | |
| Max Gust Speed | 29 mph | | |
| Visibility | 6 miles | | |
| Events | Rain , Thunderstorm | | |

T = Trace of Precipitation, MM = Missing Value          Source: NWS Daily Summary

## Daily Weather History Graph



report this ad | why ads?

## Search for Another Location

### Airport or City:

KDFW

**Submit**

## Trip Planner

Search our weather history database for the weather conditions in past years. The results will help you decide how hot, cold, wet, or windy it might be!

Date:

November

26

**Submit**

report this ad | why ads?

## Astronomy

| Nov. 26, 2015 | Rise | Set |
|---|---|---|
| Actual Time | 7:08 AM CST | 5:22 PM CST |
| Civil Twilight | 6:41 AM CST | 5:49 PM CST |
| Nautical Twilight | 6:11 AM CST | 6:19 PM CST |
| Astronomical Twilight | 5:41 AM CST | 6:49 PM CST |
| Moon | 6:30 PM CST [11/26] | 7:39 AM CST [11/26] |
| Length of Visible Light | 11h 07m | |
| Length of Day | 10h 14m | |

Full, 99% of the Moon is illuminated

| Nov 26 | Dec 3 | Dec 11 | Dec 18 | Dec 25 |
|---|---|---|---|---|
| Full | Last Quarter | New | First Quarter | Full |

report this ad | why ads?

## Hourly Weather History & Observations

| Time (CST) | Temp. | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip | Events |
|---|---|---|---|---|---|---|---|---|---|---|
| 12:53 AM | 68.0 °F | 61.0 °F | 78% | 30.07 In | 10.0 mi | SSE | 17.3 mph | 26.5 mph | N/A | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1:53 AM | 68.0 °F | 61.0 °F | 78% | 30.08 in | 10.0 mi | SSE | 13.8 mph | - | N/A | |
| 2:53 AM | 66.9 °F | 62.1 °F | 84% | 30.09 in | 10.0 mi | SSE | 15.0 mph | - | N/A | |
| 3:53 AM | 66.9 °F | 62.1 °F | 84% | 30.09 in | 10.0 mi | SSE | 12.7 mph | - | N/A | |
| 4:53 AM | 66.9 °F | 62.1 °F | 84% | 30.09 in | 10.0 mi | SSE | 16.1 mph | - | N/A | |
| 5:38 AM | 66.9 °F | 62.1 °F | 84% | 30.10 in | 10.0 mi | SSE | 18.4 mph | - | N/A | |
| 5:53 AM | 66.9 °F | 62.1 °F | 84% | 30.09 in | 10.0 mi | SSE | 16.1 mph | 24.2 mph | N/A | |
| 6:53 AM | 66.9 °F | 62.1 °F | 84% | 30.10 in | 10.0 mi | SE | 17.3 mph | 24.2 mph | N/A | |
| 7:30 AM | 66.9 °F | 63.0 °F | 87% | 30.13 in | 10.0 mi | SSE | 13.8 mph | 23.0 mph | N/A | |
| 7:53 AM | 66.9 °F | 63.0 °F | 87% | 30.13 in | 10.0 mi | SSE | 13.8 mph | - | N/A | |
| 8:53 AM | 68.0 °F | 63.0 °F | 84% | 30.14 in | 10.0 mi | SE | 17.3 mph | - | N/A | |
| 9:50 AM | 69.8 °F | 62.6 °F | 78% | 30.16 in | 10.0 mi | SE | 16.1 mph | 26.5 mph | N/A | |
| 9:53 AM | 69.1 °F | 63.0 °F | 81% | 30.14 in | 10.0 mi | SE | 19.6 mph | 27.6 mph | N/A | |
| 10:53 AM | 70.0 °F | 63.0 °F | 78% | 30.14 in | 10.0 mi | SSE | 12.7 mph | - | N/A | |
| 11:53 AM | 71.1 °F | 63.0 °F | 75% | 30.11 in | 10.0 mi | SSE | 16.1 mph | - | N/A | |
| 12:53 PM | 71.1 °F | 64.0 °F | 78% | 30.10 in | 10.0 mi | SSE | 12.7 mph | - | N/A | |
| 1:45 PM | 70.0 °F | 64.9 °F | 84% | 30.09 in | 4.0 mi | SE | 10.4 mph | - | 0.02 in | Rain |
| 1:53 PM | 70.0 °F | 64.9 °F | 84% | 30.07 in | 4.0 mi | SSE | 9.2 mph | - | 0.02 in | Rain |
| 2:05 PM | 69.1 °F | 64.9 °F | 87% | 30.08 in | 2.0 mi | SE | 10.4 mph | - | 0.02 in | Rain |

2/18/16, 2:30 PM

| Time | Temp | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust | Precip | Condition |
|---|---|---|---|---|---|---|---|---|---|---|
| 2:15 PM | 69.1 °F | 64.9 °F | 87% | 30.08 in | 1.8 mi | SE | 11.5 mph | - | 0.07 in | Rain |
| 2:29 PM | 69.1 °F | 64.9 °F | 87% | 30.07 in | 2.0 mi | SE | 12.7 mph | - | 0.09 in | Rain |
| 2:49 PM | 69.8 °F | 64.4 °F | 83% | 30.07 in | 3.0 mi | SE | 9.2 mph | - | 0.12 in | Rain |
| 2:53 PM | 69.1 °F | 66.0 °F | 90% | 30.05 in | 3.0 mi | SE | 10.4 mph | - | 0.13 in | Rain |
| 3:53 PM | 69.1 °F | 66.0 °F | 90% | 30.03 in | 8.0 mi | SSE | 15.0 mph | - | 0.08 in | Rain |
| 4:17 PM | 69.1 °F | 66.0 °F | 90% | 30.05 in | 9.0 mi | SSE | 15.0 mph | - | 0.00 in | |
| 4:50 PM | 69.8 °F | 66.2 °F | 88% | 30.05 in | 2.5 mi | SSE | 15.0 mph | - | 0.01 in | Rain |
| 4:53 PM | 69.1 °F | 66.0 °F | 90% | 30.04 in | 2.0 mi | SSE | 13.8 mph | - | 0.01 in | Rain |
| 5:10 PM | 69.1 °F | 66.0 °F | 90% | 30.06 in | 3.0 mi | SSE | 11.5 mph | - | 0.01 in | Rain |
| 5:47 PM | 69.8 °F | 66.2 °F | 88% | 30.09 in | 3.0 mi | South | 9.2 mph | - | 0.03 in | Rain |
| 5:53 PM | 69.1 °F | 66.9 °F | 93% | 30.08 in | 3.0 mi | South | 6.9 mph | - | 0.04 in | Rain |
| 6:38 PM | 69.1 °F | 66.0 °F | 90% | 30.09 in | 3.0 mi | SE | 6.9 mph | - | 0.05 in | Rain |
| 6:53 PM | 69.1 °F | 66.9 °F | 93% | 30.07 in | 3.0 mi | SSE | 5.8 mph | - | 0.05 in | Rain |
| 7:32 PM | 69.1 °F | 66.9 °F | 93% | 30.09 in | 3.0 mi | ESE | 6.9 mph | - | 0.11 in | Rain , Thunderst |
| 7:45 PM | 69.1 °F | 66.9 °F | 93% | 30.10 in | 2.0 mi | SSE | 9.2 mph | - | 0.18 in | Rain , Thunderst |
| 7:53 PM | 69.1 °F | 66.9 °F | 93% | 30.08 in | 1.2 mi | SSE | 6.9 mph | - | 0.30 in | Rain , Thunderst |
| 8:21 PM | 69.1 °F | 66.9 °F | 93% | 30.08 in | 3.0 mi | SSE | 10.4 mph | - | 0.30 in | Rain , Thunderst |

| 8:53 PM | 70.0 °F | 66.9 °F | 90% | 30.07 in | 3.0 ml | SSE | 10.4 mph | -- | 0.40 in | Rain , Thunderst |
| 9:14 PM | 70.0 °F | 66.9 °F | 90% | 30.09 in | 2.0 ml | South | 15.0 mph | -- | 0.12 in | Rain , Thunderst |
| 9:22 PM | 70.0 °F | 66.9 °F | 90% | 30.09 in | 1.0 ml | South | 11.5 mph | -- | 0.37 in | Rain , Thunderst |
| 9:44 PM | 70.0 °F | 66.9 °F | 90% | 30.09 in | 3.0 ml | South | 13.8 mph | 27.6 mph | 0.81 in | Rain , Thunderst |
| 9:53 PM | 70.0 °F | 66.9 °F | 90% | 30.08 in | 7.0 ml | South | 8.1 mph | -- | 0.82 in | Rain , Thunderst |
| 10:28 PM | 70.0 °F | 66.9 °F | 90% | 30.10 in | 2.5 ml | South | 5.8 mph | -- | 0.07 in | Rain , Thunderst |
| 10:53 PM | 70.0 °F | 66.9 °F | 90% | 30.08 in | 6.0 ml | South | 8.1 mph | -- | 0.10 in | Rain , Thunderst |
| 11:02 PM | 70.0 °F | 66.9 °F | 90% | 30.10 in | 1.5 ml | South | 9.2 mph | -- | 0.11 in | Rain , Thunderst |
| 11:21 PM | 70.0 °F | 66.9 °F | 90% | 30.09 in | 1.5 ml | ESE | 5.8 mph | -- | 0.30 in | Rain , Thunderst |
| 11:53 PM | 69.1 °F | 66.9 °F | 93% | 30.06 in | 1.5 ml | East | 9.2 mph | -- | 0.69 in | Rain , Thunderst |

report this ad

NBCDFW.com

NEWSLETTERS | SEND PICS | TIPS

Search

HOME | NEWS | WEATHER | INVESTIGATIONS | ENTERTAINMENT | TRAFFIC | CONYSSYS | CONTACT US

FORECAST   MAPS & RADAR   WEATHER ALERTS   SCHOOL CLOSING ALERTS   WEATHER NEWS   SKYCAMS

A #1 AIR — Real guarantees with no fine print — 24/7 service with no overtime charges — Easy financing options — "We treat our customers like family" — Sherry and James Green — 1-800-NEW-HEAT. | ANUMBERAIR.COM

# TEXAS FLOODING

CONTINUING COVERAGE OF FLOODING DURING SEVERE STORMS IN TEXAS

## 3 Killed, 1 Missing in Fast-Moving Flash Floods

By Emily Schmall

View Comments (2) | Email | Print      Tweet      Recommend {31}      Send | GH {0}



The Trinity River for the second time this year has been over flooded. (Published Saturday, Nov. 28, 2015)

At least three people have died in fast-moving floodwaters in North Texas as freezing rain and flooding pummeled the state and other parts of the central U.S. on Friday, with forecasters warning that the chilling weather would worsen over the holiday weekend.

Forecasters issued flash-flood watches and warnings from northern Texas up to St. Louis, with up to 4 inches of rain reported in some places as the storm system makes a slow trek to the northeast. Freezing rain and strong winds also caused at least two fatal traffic accidents in western Kansas on Thursday.


EMPLOYEE HELD OVER
24 MONTH FINANCING
Some restrictions apply. See store or website for details.

TRENDING STORIES

1   [VIDEO]  FBI Raids Housing Financial Firm in Grapevine

2   [VIDEO]  Crash, Downed Lines Close Loop 820 at Randol Mill

3   [VIDEO]  State Investigates Child's Injuries at Richardson Daycare

4   Owner of Lewisville Day Care Where Child Died Arrested

http://www.nbcdfw.com/weather/stories/3-Killed-1-Missing-in-Fast-moving-Flash-Floods-356146651.html

EXHIBIT
B

Page 1 of 5

- Two EF2 Tornadoes in East Texas on Saturday: NWS

In North Texas, where more than 4 inches of rain fell overnight in the Dallas-Fort Worth area -- pushing the annual rainfall total into the record books -- three people died after being washed away in the deep, rapid floodwaters. At least one other person is missing.

SPONSORED | VIDEO | Cooler Temps Ahead This Weekend


WEATHER FORECAST


WEATHER ALERTS    View all

DFW Airport, TX

72° Clear
Feels Like 72


Radar   Forecast   Maps



### Man Killed in Fast-Moving Floods in Dallas County

*Firefighters in Garland found 29-year-old Benjamin Floyd of Wylie dead inside a submerged Hyundai Elantra, fire department spokesman Merrill Balanciere said. (Published Friday, Nov. 27, 2015)*

Firefighters in Garland found 29-year-old Benjamin Floyd of Wylie dead inside a submerged Hyundai Elantra, fire department spokesman Merrill Balanciere said.

Crews found the body of 33-year-old Sandra Jones just after 8 a.m. downstream from her vehicle just west of Fort Worth. Jones' car was washed off the road in waters flowing 10 to 12 feet above the banks of Rock Creek, Johnson County Sheriff's Office spokesman Tim Jones said.

- Storm Winds Blow Rail Cars From East Texas Overpass

Johnson County sheriff's deputies responded to a high-water rescue early Friday after three people were swept into the water overnight. Two people were rescued, but the third person, identified as 48-year-old Jose Vargas, was recovered Friday morning near Mansfield, about 18 miles southeast of Fort Worth, officials said.

Firefighters in Fort Worth are waiting for the water to recede before deploying a dive team to continue searching for another woman whose car was swept away in a flood, according to spokesman Kyle Falkner.

- Tornadoes Cause Damage in East Texas

A total 55.23 inches of rain has been recorded at Dallas-Fort Worth International Airport this year, topping the annual rainfall record of 53.54 inches set in 1991. National Weather Service forecaster Matt Stalley says rain is forecast in the area through Sunday.

The state transportation department discouraged travel in the Texas Panhandle after the storm front left dozens of major roads, bridges and overpasses covered in ice and snow. Winds whipping around snow also kept visibility low in some places.

• [WEATHER ALERT] NBC 5 Forecast: Wind Advisory Today

Elsewhere, an ice storm warning was in effect for western Oklahoma until noon Saturday, while a winter weather advisory and a flash flood watch were issued for parts of central Oklahoma. The National Weather Service warned of freezing rain and sleet in northern and western Oklahoma Friday, with up to a half inch of ice possible in some areas.

The weather service also issued flood warnings throughout Arkansas, saying much of central and western Arkansas could see 5 to 7 inches of rain through Sunday, while the Ouachita Mountain region could get more than 8 inches.

The Kansas Highway Patrol attributed two traffic fatalities on Thursday to icy roads in western Kansas.

The weather service issued a winter storm warning for sections of central and southern Kansas through early Saturday and said up to a quarter inch of sleet and ice could hit the state by Friday night.

*NBC 5's Eric King contributed to this report.*

Published at 3:39 PM CST on Nov 27, 2015

Copyright Associated Press / NBC 5 Dallas-Fort Worth

YOU MAY LIKE                                    Promoted Links by Taboola

7 Outrageous Credit Cards If You Have Excellent Credit
NextAdvisor

New Social Security Law Goes Into Effect In May – Here's What It Means for You
Money Morning Subscription

When Hiring New Talent, Consider Workplace Diversity
Linkedin | PwC

Woman Waits More Than 2 Months for Car Repair

Elderly Murder Victim Found Bound And Gagged In Home

Dallas Residents Celebrate Cane's Grand Opening

**FROM THE WEB**

**MORE FROM NBC5 DFW**

- "Normal" Belts Are Going the Way of the Dinosaur. Here's Why. (SlideBelts)
- 7 Credit Cards You Should Not Ignore If You Have Excellent Credit (NextAdvisor)
- Here's What Happened When I Tried Dollar Shave Club (Dollar Shave Club)
- What Does Your Last Name Say About You? (Ancestry)
- CX Analytics Assessment - Understanding Customer Engage... (IBM)
- 3-Alarm Fire Engulfs Dallas Church
- Upscale Gun Range Opens In Frisco
- Dallas-Fort Worth's Latest Videos, News Video, and Video Clips
- Cruz Leads Trump In Latest Voter Poll
- 'College Prep Genius' Author Discusses SAT Prep

Promoted Links by Taboola

---

View Comments (2)   |   Email   |   Print

**Leave Comments**

0 Comments                                                          Sort by   Newest

   Add a comment...

Facebook Comments Plugin



**NEWS**

Local
U.S. & World
Sports
Health
Tech
Weather
Blue Star
Red Fever

**WEATHER**

Forecast
Maps & Radar
Weather Alerts
School Closing
Alerts
Weather News
Skycams

**ENTERTAINMENT**

Entertainment News
The Scene
~~~~~~~~~~~~~~~
CoziTV.com

**CONTACT US**

Social Directory
About Us
Community
TV Listings
Careers
Advertise

**TRAFFIC**

FCC Independent Programming Report
FCC News and Information Programming Report
NBC Non-Profit News Partnership Reports
KXAS Public Inspection File
21st Century Solutions

Send Feedback   |   Terms of service   |   Privacy policy

AdChoices

© 2016 NBCUniversal Media, LLC. All rights reserved.

NBCDFW.com

NEWSLETTERS | SEND PICS | TIPS

Search

HOME | NEWS | WEATHER | INVESTIGATIONS | ENTERTAINMENT | TRAFFIC | CONTESTS | CONTACT US

FORECAST   MAPS & RADAR   WEATHER ALERTS   SCHOOL CLOSING ALERTS   WEATHER NEWS   SKYCAMS

Choose the Best Drive a CREST
For a limited time, enjoy attractive offers on inspiring vehicles

2015 Infiniti QX60

This website would like to remind you: Your browser (Apple Safari 7) is out of date. Update your browser for more security, comfort and the best experience on this site.   ✕

# TEXAS FLOODING

CONTINUING COVERAGE OF FLOODING DURING SEVERE STORMS IN TEXAS

## Grapevine Roads Closing Due to High Water

By Kevin Cokely

View Comments (0) | Email | Print      Tweet      Recommend {17}    , Send    G+1 { 0 }





Heavy rains and flash flooding has closed roads in Grapevine. (Published Friday, Nov. 27, 2015)

Heavy rains and flash flooding has closed roads in Grapevine.

Farm-to-Market Road 2499 is open Friday afternoon, but will likely close again at some point over the weekend as water levels rise and fall in Denton Creek, officials said.

- **Two EF2 Tornadoes in East Texas on Saturday: NWS**

### TRENDING STORIES

1  [VIDEO] FBI Raids Housing Financial Firm in Grapevine

2  [VIDEO] Crash, Downed Lines Close Loop 820 at Randol Mill

3  [VIDEO] State Investigates Child's Injuries at Richardson Daycare

4  Owner of Lewisville Day Care Where Child Died Arrested

Kimball Road, north of Snakey Lane, is closed at the low point along Lake Grapevine, which is already up 3 feet, and will likely stay closed through the weekend.

Chief Daryl Brown said flooding in the area is common.

- **Storm Winds Blow Rail Cars From East Texas Overpass**

"That area does have a tendency to flood. And water is just running out and its just a little more than what the storm drains can handle so we have to close the road temporarily until we get a break in the rain, let the water run off and then they open it back up," Brown said. "The residents here, they're all pretty well away of this and we monitor it and we put the barricades up when necessary."

With three fatalities already confirmed and attributed to high water, drivers are urged to remember, "Turn Around, Don't Drown."

- **Tornadoes Cause Damage in East Texas**

A fourth person, a 70-year-old woman, is presumed dead after her vehicle was swept downstream Friday.

"The search for the female victim will resume once the flood waters have receded and the water current is safe enough for an underwater search," the Fort Worth Fire Department said.

- [WEATHER ALERT] **NBC 5 Forecast: Wind Advisory Today**

Published at 4:23 PM CST on Nov 27, 2015

### YOU MAY LIKE

Promoted Links by Taboola

Dr. Ron Paul: "Crisis Bigger Than 2008 Is Coming"
Stansberry Research

Cable TV Is Dying. Here's What Comes Next
The Motley Fool

The Fastest Way To Pay Off $10,000 In Credit Card Debt
LendingTree

Woman Waits More Than 2 Months for Car Repair

Richardson Daycare Under Investigation Over Baby's Injuries

'Late Night': Anderson Apologizes for Gas on Set

SPONSORED [VIDEO] Cooler Temps Ahead This Weekend

## WEATHER FORECAST

 WEATHER ALERTS          View all

DFW Airport, TX

 72° Clear
Feels Like 72

  

Radar      Forecast      Maps



FROM THE WEB

MORE FROM NBC5 DFW

- Automate Everything with Salesforce App Cloud Platform. Free De... (Salesforce)
- Get Grandfathered In For Extra Social Security By April 30th (Stansberry Research)
- "Normal" Belts Are Going the Way of the Dinosaur. Here's Why. (SlideBelts)
- 7 Credit Cards You Should Not Ignore If You Have Excellent Credit (NextAdvisor)
- Here's What Happened When I Tried Dollar Shave Club (Dollar Shave Club)
- Upscale Gun Range Opens in Frisco
- Dallas Residents Celebrate Cane's Grand Opening
- Dallas-Fort Worth's Latest Videos, News Video, and Video Clips
- Potential Target: Alejandro De Aza
- Pope Francis to Trump: Building Mexico Wall Is 'Not Christian'

Promoted Links by Taboola

View Comments (0) | Email | Print

**Leave Comments**



NEWS
Local
U.S. & World
Sports
Health
Tech
Weird
Weather
Blue Star
Red Fever

WEATHER
Forecast
Maps & Radar
Weather Alerts
School Closing Alerts
Weather News
Skycams

ENTERTAINMENT
Entertainment News
The Scene

CoziTV.com

TRAFFIC

CONTACT US
Social Directory
About Us
Community
TV Listings
Careers
Advertise

Grapevine Roads Closing Due to High Water | NBC 5 Dallas-Fort Worth                    2/18/16, 2:32 PM

FCC Independent Programming Report
FCC News and Information Programming Report
NBC Non-Profit News Partnership Reports
KXAS Public Inspection File
21st Century Solutions

Send Feedback    |    Terms of service    |    Privacy policy

[> AdChoices

© 2016 NBCUniversal Media, LLC. All rights reserved.



EXHIBIT































**DWELLING POLICY**

**NATIONAL FLOOD INSURANCE PROGRAM**

**STANDARD FLOOD INSURANCE POLICY**

Issued Pursuant to the National Flood Insurance
Act of 1968, or Any Acts Amendatory Thereof, and
Applicable Federal Regulations in Title 44 of the
Code of Federal Regulations, Subchapter B]

Revised May 1, 2003

Provided on behalf of the "Write Your Own"
Company
Shown on your
Flood Insurance Declarations Page

****

92201-00TH

---

(1) The building limit of liability shown on your Declarations Page;

(2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality, and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use..

b. If the dwelling is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the dwelling had been rebuilt at its former location.

c. When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the dwelling, we will not be liable for any loss under V.2.a. above or V.4.a.(2) below unless and until actual repair or replacement is completed.

d. You may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. You may then make claim for any additional liability according to V.2.k., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

e. If the community in which your dwelling is located has been converted from the Emergency Program to the Regular Program during the current policy term, then we will consider the maximum amount of available NFIP insurance to be the amount that was available at the beginning of the current policy term.

3. **Special Loss Settlement**

a. The following loss settlement conditions apply to a single-family dwelling that:

(1) Is a manufactured or mobile home or a travel trailer, as defined in II.B.6.b. and II.B.6.c.;

(2) Is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled; and

(3) Is your principal residence, as specified in V.1.a.(1) above.

b. If such a dwelling is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its predamage condition, we will, at our discretion, pay the least of the following amounts:

(1) The lesser of the replacement cost of the dwelling or 1.5 times the actual cash value, or

(2) The building limit of liability shown on your Declarations Page.

c. If such a dwelling is partially damaged and, in our judgment, it is economically feasible to repair it to its predamage condition, we will settle the loss according to the Replacement Cost conditions in paragraph V.2. above.

4. **Actual Cash Value Loss Settlement**

The types of property noted below are subject to actual cash value [or in the case of V.4.a.(2) below, proportional] loss settlement.

a. A dwelling, at the time of loss, when the amount of insurance on the dwelling is both less than 80 percent of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the NFIP. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that dwelling:

(1) The actual cash value, as defined in II.B.2., of the damaged part of the dwelling; or

(2) A proportion of the cost to repair or replace the damaged part of the dwelling, without deduction for physical depreciation and after application of the deductible.

This proportion is determined as follows: If 80 percent of the full replacement cost of the dwelling is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the amount of insurance that represents 80 percent of its full replacement cost. But if 80 percent of the full replacement cost of the dwelling is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the maximum amount of insurance available under the NFIP.

b. A two-, three-, or four-family dwelling.

c. A unit that is not used exclusively for single-family dwelling purposes.

d. Detached garages.

e. Personal property.

f. Appliances, carpets, and carpet pads.

g. Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.

h. Any property covered under this policy that is abandoned after a loss and remains as debris anywhere on the described location.

i. A dwelling that is not your principal residence.

5. **Amount of Insurance Required**

To determine the amount of insurance required for a dwelling immediately before the loss, do not include the value of:

a. Footings, foundations, piers, or any other structures or devices that are below the undersurface of the lowest basement floor and support all or part of the dwelling;

b. Those supports listed in V.5.a. above that are below the surface of the ground inside the foundation walls if there is no basement; and

c. e. Excavations and underground flues, pipes, wiring, and drains.

The Coverage D - Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

---

### VIII. LIBERALIZATION CLAUSE

If we make a change that broadens your coverage under this edition of our policy, but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before, or during, the policy term stated on the Declarations Page.

### IX. WHAT LAW GOVERNS

This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

IN WITNESS WHEREOF, we have signed this policy below and hereby enter into this Insurance Agreement.

---

Company Official Signature

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.**

**STANDARD FLOOD INSURANCE POLICY**

**ENDORSEMENT NUMBER ONE (REVISED)**

This endorsement:
- Replaces the provisions of VII.B.4 and VII.H.2 and also adds a new paragraph, VII.H.5, to the Dwelling Form and General Property Form.
- Replaces the provisions of VIII.B.4 and VIII.H.2 and also adds a new paragraph, VIII.H.5, to the Residential Condominium Building Association Policy.

This endorsement applies in Monroe County and the Village of Islamorada, Florida. This endorsement also applies to communities within Monroe County, Florida, that incorporate on or after January 1, 1999, agree to participate in the inspection procedure, and become eligible for the sale of NFIP flood insurance.

VII.B.4 and VIII.B.4. This policy is also void for reasons other than fraud, misrepresentation, or wrongful act. This policy is void from its inception and has no legal force under the following conditions:

a. If the property is located in a community that was not participating in the NFIP on the policy's inception date and did not join or re-enter the program during the policy term and before the loss occurred.

b. If you have not submitted a community inspection report, referred to in "H. Policy Renewal" below, that was required in a notice sent to you in conjunction with the community inspection procedure established under 44 CFR 59.30.

c. If the property listed on the application is not otherwise eligible for coverage under the NFIP.

VII.H.2 and VIII.H.2. We must receive the payment of the appropriate renewal premium and when applicable, the community inspection report referred to in paragraph H.5 below within 30 days of expiration date.

VII.H.5 and VIII.H.5. Your community has been approved by the Federal Emergency Management Agency to participate in and inspection procedure set forth in NFIP Regulations (44 CFR 59.30). During the several years this inspection procedure will be in place, you may be required to obtain and submit an inspection report from your community certifying whether or not your insured property is in compliance with the community's floodplain management ordinance before you can renew your policy. You will be notified in writing of this requirement approximately 6 months before a renewal date and again at the time your renewal bill is sent.

Company Official Signature

# DWELLING POLICY

## NATIONAL FLOOD INSURANCE PROGRAM

### STANDARD FLOOD INSURANCE POLICY

[Issued Pursuant to the National Flood Insurance Act of 1968, or Any Acts Amendatory Thereof (Hereinafter Called the Act), and Applicable Federal Regulations in Title 44 of the Code of Federal Regulations, Subchapter B]

#### CLAIM GUIDELINES IN CASE OF A FLOOD

For the protection of you and your family, the following claim guidelines are provided by the National Flood Insurance Program (NFIP). If you are ever in doubt as to what action is needed, consult your insurance representative.

Know your insurance representative's name and telephone number. List them here for fast reference.

Insurance Representative _____

Representative's Phone Number _____

If you cannot reach your agent, report your claim directly by calling the NFS Claims Department at 1-800-759-8656.

- Notify your insurance representative, in writing, as soon as possible after the flood.
- Determine the independent claims adjuster assigned to your claim and contact him or her if you have not been contacted within 24 hours after you reported the claim to your insurance representative.
- As soon as possible, separate damaged property from undamaged property so that damage can be inspected and evaluated.
- Discuss with the claims adjuster any need you may have for an advance or partial payment for your loss.
- To help the claims adjuster, try to take photographs of the outside of the premises showing the flooding and the damage and photographs of the inside of the premises showing the height of the water and the damaged property.
- Place all account books, financial records, receipts, and other loss verification material in a safe place for examination and evaluation by the claims adjuster.
- Work cooperatively and promptly with the claims adjuster to determine and document all claim items. Be prepared to advise the claims adjuster of the cause and responsible party(ies), if the flooding resulted from other than natural cause.
- Make sure that the claims adjuster fully explains, and that you fully understand, all allowances and procedures for processing claim payments on the basis of your proof of loss. This policy requires you to send us detailed proof of loss within 60 days after the loss.
- Any and all coverage problems and claim allowance restrictions must be communicated directly from the Company. Claims adjusters are not authorized to approve or deny claims; their job is to report to the Company on the elements of flood cause and damage.

At our option, we may accept an adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages to your insured property. You must sign the adjuster's report. At our option, we may require you to swear to the report.

#### DWELLING FORM
#### SUMMARY OF SIGNIFICANT CHANGES, DECEMBER 31, 2000

1. Section III. Property Covered, A. Coverage A - Building Property, 2.
   Additions and extensions to buildings that are connected by a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof may be insured as part of the dwelling. At the option of the insured, these extensions and additions may be insured separately. Additions and extensions that are attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be insured separately.
2. Section III. Property Covered, A. Coverage A - Building Property, 3.
   Coverage for detached carports has been eliminated.
3. Section III. Property Covered, B. Coverage B - Personal Property 4.
   Coverage has been extended to include coverage for cooking stoves, ranges, or refrigerators belonging to the renter, as well as 10 percent of contents coverage for improvements made by the renter to the building.
4. Section III. Property Covered, B. Coverage B - Personal Property, 5.
   Coverage for condominium unit owners has been extended to apply up to 10 percent of the contents coverage for losses to interior walls, floors, and ceilings not covered by the condominium association's master policy.
5. Section III. Property Covered, B. Coverage B - Personal Property, 6. Special Limits
   Coverage for fine arts, collectibles, jewelry, and furs, etc. has been increased to $2500. Also, personal property used in a business has been added under this extension of coverage.
6. Section III. Property Covered, C. Coverage C - Other Coverages, 2.a. & b.
   Coverage for the two loss avoidance measures (sandbagging and relocation of property to protect it from flood or the imminent danger of flood) has been increased to $1,000 for each.
7. Section IV. Property Not Covered, 5.a. & b.
   Coverage has been changed to pay for losses to self-propelled vehicles used to service the described location or designed to assist handicapped persons provided that the vehicles are in a building at the described location.
8. Section IV. Property Not Covered, 7.
   Coverage is now specifically excluded for scalp and stored value cards.
9. Section IV. Property Not Covered, 14.
   Coverage for swimming pools, hot tubs and spas (that are not bathroom hot tubs or spas), and their equipment is now excluded.
10. Section V. Exclusions, B.1. & 2.
    The explanation of when coverage begins as it relates to a loss in progress has been simplified.
11. Section V. Exclusions, C.
    Coverage has been clarified to pay for losses from land subsidence under certain circumstances. Subsidence of land along a lake shore or similar body of water which results from the erosion or undermining of the shoreline caused by waves or currents of water exceeding cyclical levels that result in a flood continues to be covered. All other land subsidence is now excluded.
12. Section V. Exclusions, D.4.b.(3)
    Coverage is now excluded for water, moisture, mildew, or mold damage caused by the policyholder's failure to inspect and maintain the insured property after the flood waters recede.
13. Section V. Exclusions, D.6.
    Coverage is now added for damage from the pressure of water against the insured structure with the requirement that there be a flood in the area and the flood is the proximate cause of damage from the pressure of water against the insured structure.
14. Section V. Exclusions, F.
    An exclusion for the cost of testing for or monitoring of pollutants unless it is required by law or ordinance has been added.
15. Section VII. General Conditions, G. Reduction and Reformation of Coverage, 2.a.(3)
    If it is discovered before a claim occurs that there is incomplete rating information, the policyholder has 60 days to submit the missing rating information. Otherwise, the coverage is limited to the amount of coverage that can be purchased for the premium originally received and can only be increased by an endorsement that is subject to the appropriate waiting period (currently 30 days).
16. Section VII. General Conditions, V. Loss Settlement, 3. Special Loss Settlement, b.(1)
    Coverage for a manufactured or mobile home or a travel trailer eligible for replacement cost coverage is limited to 1.5 times its actual cash value.

#### STANDARD FLOOD INSURANCE POLICY
#### DWELLING FORM

PLEASE READ THE POLICY CAREFULLY. THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS.

THIS POLICY COVERS ONLY:
1. A NON-CONDOMINIUM RESIDENTIAL BUILDING DESIGNED FOR PRINCIPAL USE AS A DWELLING PLACE FOR ONE TO FOUR FAMILIES, OR
2. A SINGLE-FAMILY DWELLING UNIT IN A CONDOMINIUM BUILDING.

## I. AGREEMENT

The Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR).

We will pay you for direct physical loss by or from flood to your insured property if you:
1.   Have paid the correct premium;
2.   Comply with all terms and conditions of this policy; and
3.   Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your policy based on our review.

## II. DEFINITIONS

A.   In this policy, "you" and "your" refer to the insured(s) shown on the Declarations Page of this policy and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

Flood, as used in this flood insurance policy, means:
1.   A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:
   a.   Overflow of inland or tidal waters;
   b.   Unusual and rapid accumulation or runoff of surface waters from any source;
   c.   Mudflow.
2.   Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a. above.
3.   The following are the other key definitions that we use in this policy:
   1.   Act. The National Flood Insurance Act of 1968 and any amendments to it.
   2.   Actual Cash Value. The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.
   3.   Application. The statement made and signed by you or your agent in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy. For us to issue you a policy, the correct premium payment must accompany the application.
   4.   Base Flood. A flood having a one percent chance of being equaled or exceeded in any given year.
   5.   Basement. Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.
   6.   Building.
      a.   A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;
      b.   A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or
      c.   A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

Building does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle, except as described in B.6.c. above.

7.   Cancellation. The ending of the insurance coverage provided by this policy before the expiration date.
8.   Condominium. That form of ownership of real property in which each unit owner has an undivided interest in common elements.
9.   Condominium Association. The entity made up of the unit owners responsible for the maintenance and operation of:
   a.   Common elements owned in undivided shares by unit owners; and
   b.   Other real property in which the unit owners have use rights;
   where membership in the entity is a required condition of unit ownership.
10.  Declarations Page. A computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy.
11.  Described Location. The location where the insured building(s) or personal property are found. The described location is shown on the Declarations Page.
12.  Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.
13.  Dwelling. A building designed for use as a residence for no more than four families or a single-family unit in a building under a condominium form of ownership.
14.  Elevated Building. A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.
15.  Emergency Program. The initial phase of a community's participation in the National Flood Insurance Program. During this phase, only limited amounts of insurance are available under the Act.
16.  Expense Constant. A flat amount you must pay on each new or renewal policy to defray the expenses of the Federal Government related to flood insurance.
17.  Federal Policy Fee. A flat charge you must pay on each new or renewal policy to defray certain administrative expenses incurred in carrying out the National Flood Insurance Program. This fee covers expenses not covered by the expense constant.
18.  Improvements. Fixtures, alterations, installations, or additions comprising a part of the insured dwelling or the apartment in which you reside.
19.  Mudflow. A river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not mudflows.
20.  National Flood Insurance Program (NFIP). The program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.
21.  Policy. The entire written contract between you and us. It includes:
   a.   This printed form;
   b.   The application and Declarations Page;
   c.   Any endorsement(s) that may be issued; and
   d.   Any renewal certificate indicating that coverage has been instituted for a new policy and new policy term.

Only one dwelling, which you specifically described in the application, may be insured under this policy.

22.  Pollutants. Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.
23.  Post-FIRM Building. A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.
24.  Probation Premium. A flat charge you must pay on each new or renewal policy issued covering property in a community that the NFIP has placed on probation under the provisions of 44 CFR 59.24.
25.  Regular Program. The final phase of a community's participation in the National Flood Insurance Program. In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the Act.
26.  Special Flood Hazard Area. An area having special flood, or mudflow, and/or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.
27.  Unit. A single-family unit you own in a condominium building.

Valued Policy. A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy.

## III. PROPERTY COVERED

### A.   COVERAGE A - BUILDING PROPERTY
We insure against direct physical loss by or from flood to:
1.   The dwelling at the described location, or for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.
2.   Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be separately insured.
3.   A detached garage at the described location. Coverage is limited to no more than 10 percent of the limit of liability on the dwelling. Use of this insurance is at your option but reduces the building limit of liability. We do not cover any detached garage used or held for use for residential (i.e., dwelling), business, or farming purposes.
4.   Materials and supplies to be used for construction, alteration, or repair of the dwelling or a detached garage while the materials and supplies are stored in a fully enclosed building at the described location or on an adjacent property.
5.   A building under construction, alteration, or repair at the described location.
   a.   If the structure is not yet walled or roofed as described in the definition for building (see II.B.6.a.) then coverage applies:
      (1)   Only while work work is in progress; or
      (2)   If such work is halted, only for a period of up to 90 continuous days thereafter.
   b.   However, coverage does not apply until the building is walled and roofed if the lowest floor, including the basement floor, of a non-elevated building or the lowest elevated floor of an elevated building is:
      (1)   Below the base flood elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or
      (2)   Below the base flood elevation adjusted to include the effect of wave action in Zones VE or V1-V30.
   The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.
6.   A manufactured home or a travel trailer as described in the Definitions section (see II.B.6.b. and II.B.6.c.).
   If the manufactured home or travel trailer is in a special flood hazard area, it must be anchored in the following manner at the time of the loss:

a. By the over-the-top or frame ties to ground anchors; or
b. In accordance with the manufacturer's specifications; or
c. In compliance with the community's floodplain management requirements;

unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

7. The following items of property which are covered under Coverage A only:
   a. Awnings and canopies;
   b. Blinds;
   c. Built-in dishwashers;
   d. Built-in microwave ovens;
   e. Carpet permanently installed over unfinished flooring;
   f. Central air conditioners;
   g. Elevator equipment;
   h. Fire sprinkler systems;
   i. Walk-in freezers;
   j. Furnaces and radiators;
   k. Garbage disposal units;
   l. Hot water heaters, including solar water heaters;
   m. Light fixtures;
   n. Outdoor antennas and aerials fastened to buildings;
   o. Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;
   p. Plumbing fixtures;
   q. Pumps and machinery for operating pumps;
   r. Ranges, cooking stoves, and ovens;
   s. Refrigerators; and
   t. Wall mirrors, permanently installed.

8. Items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement, regardless of the zone. Coverage is limited to the following:
   a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
      (1) Central air conditioners;
      (2) Cisterns and the water in them;
      (3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;
      (4) Electrical junction and circuit breaker boxes;
      (5) Electrical outlets and switches;
      (6) Elevators, dumbwaiters, and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;
      (7) Fuel tanks and the fuel in them;
      (8) Furnaces and hot water heaters;
      (9) Heat pumps;
      (10) Nonflammable insulation in a basement;
      (11) Pumps and tanks used in solar energy systems;
      (12) Stairways and staircases attached to the building, not separated from it by elevated walkways;
      (13) Sump pumps;
      (14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;
      (15) Well water tanks and pumps;
      (16) Required utility connections for any item in this list; and
      (17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.
   b. Clean-up.

## B. COVERAGE B – PERSONAL PROPERTY

1. a. If you have purchased personal property coverage, we insure against direct physical loss by or from flood to personal property inside a building at the described location, if:
      a. The property is owned by you or your household family members; and
      b. At your option, the property is owned by guests or servants.

   Personal property is also covered for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.

   Personal property in a building that is not fully enclosed must be secured to prevent flotation out of the building. If the personal property does float out during a flood, it will be conclusively presumed that it was not reasonably secured. In that case there is no coverage for such property.

2. Coverage for personal property includes the following property, subject to B.1. above, which is covered under Coverage B only:
   a. Air conditioning units, portable or window type;
   b. Carpets, not permanently installed, over unfinished flooring;
   c. Carpets over finished flooring;
   d. Clothes washers and dryers;
   e. "Cook-out" grills;
   f. Food freezers, other than walk-in, and food in any freezer; and
   g. Portable microwave ovens and portable dishwashers.

3. Coverage for items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
   a. Air conditioning units, portable or window type;
   b. Clothes washers and dryers; and
   c. Food freezers, other than walk-in, and food in any freezer.

4. If you are a tenant and have insured personal property under Coverage B in this policy, we will cover such property, including your cooking stove or range and refrigerator. The policy will also cover floor improvements made or acquired solely at your expense in the dwelling or apartment in which you reside, but for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

5. If you are the owner of a unit and have insured personal property under Coverage B in this policy, we will also cover your interior walls, floor, and ceiling (not otherwise covered under a flood insurance policy purchased by your condominium association) for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

6. Special Limits. We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:
   a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;
   b. Rare books or autographed items;
   c. Jewelry, watches, precious and semiprecious stones, or articles of gold, silver, or platinum;
   d. Furs or any article containing fur which represents its principal value; or
   e. Personal property used in any business.

7. We will pay only for the functional value of antiques.

## C. COVERAGE C – OTHER COVERAGES

1. Debris Removal
   a. We will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere.
   b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.
   c. This coverage does not increase the Coverage A or Coverage B limit of liability.

2. Loss Avoidance Measures
   (a) Sandbags, Supplies, and Labor
      (1) We will pay up to $1,000 for costs you incur to protect the insured building from a flood or imminent danger of flood, for the following:
         (b) Your reasonable expenses to buy:
            (i) Sandbags, including sand to fill them;
            (ii) Fill for temporary levees;
            (iii) Pumps; and
            (iv) Plastic sheeting and lumber used in connection with these items.
         (b) The value of work, at the Federal minimum wage, that you or a member of your household perform.
      (2) This coverage for Sandbags, Supplies, and Labor applies only if damage to insured property by or from flood is imminent, and the threat of flood damage is apparent enough to lead a person of common prudence to anticipate flood damage. One of the following must also occur:
         (a) A general and temporary condition of flooding in the area near the described location must occur, even if the flood does not reach the insured building; or
         (b) A legally authorized official must issue an evacuation order or other civil order for the community in which the insured building is located calling for measures to preserve life and property from the peril of flood.

   This coverage does not increase the Coverage A or Coverage B limit of liability.

   (b) Property Removed to Safety
      (1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described location that contains the property in order to protect it from flood or the imminent danger of flood.

      Reasonable expenses include the value of work, at the Federal minimum wage, that you or a member of your household perform.

      (2) If you move insured property to a location other than the described location that contains the property, in order to protect it from flood or the imminent danger of flood, we will cover such property while at that location for a period of 45 consecutive days from the date you began to move it there. The personal property that is moved must be placed in a fully enclosed building or otherwise reasonably protected from the elements.

      Any property removed, including a moveable home described in II.B.6.b. and c., must be placed above ground level or outside of the special flood hazard area.

      · This coverage does not increase the Coverage A or Coverage B limit of liability.

3. Condominium Loss Assessments
   a. If this policy insures a unit, we will pay, up to the Coverage A limit of liability, your share of loss assessments charged against you by the condominium association in accordance with the condominium association's articles of association, declaration and your deed.

   The assessment must be made as a result of direct physical loss by or from flood during the policy term, to the building's common elements.

   b. We will not pay any loss assessments charged against you:
      (1) And the condominium association by any governmental body;
      (2) That results from a deductible under the insurance purchased by the condominium association insuring common elements;
      (3) That results from a loss to personal property, including contents of a condominium building;
      (4) That results from a loss sustained by the condominium association that was not reimbursed under a flood insurance policy written in the name of the association under the Act because the building was not, at the time of loss, insured for an amount equal to the lesser of:
         (a) 80 percent or more of its full replacement cost; or
         (b) The maximum amount of insurance permitted under the Act;

(5) To the extent that payment under this policy for a condominium building loss, in combination with payments under any other NFIP policies for the same building loss, exceeds the maximum amount of insurance permitted under the Act for that kind of building; or

(6) To the extent that payment under this policy for a condominium building loss, in combination with any recovery available to you as a tenant in common under any NFIP condominium association policies for the same building loss, exceeds the amount of insurance permitted under the Act for a single-family dwelling.

Loss assessment coverage does not increase the Coverage A limit of liability.

## D. COVERAGE D – INCREASED COST OF COMPLIANCE

### 1. General

This policy pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

a. Nonresidential structures.

b. Residential structures with basements that satisfy the Federal Emergency Management Agency's (FEMA's) standards published in the Code of Federal Regulations (44 CFR 60.6 (b) or (c)).

### 2. Limit of Liability

We will pay you up to $30,000 under this Coverage D – Increased Cost of Compliance, which only applies to policies with building coverage (Coverage A).

Our payment of claims under this Coverage D is in addition to the amount of coverage which you selected on the application and which appears on the Declarations Page. But the maximum you can collect under this policy for both Coverage A – Building Property and Coverage D – Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

### 3. Eligibility

a. A structure covered under Coverage A – Building Property sustaining a loss caused by a flood as defined by this policy must:

(1) Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

(a) The structure is covered by a contract of flood insurance issued under the NFIP.

(b) The structure has suffered flood damage on two occasions during a 10-year period which ends on the date of the second loss.

(c) The cost to repair the flood damage, on average, equaled or exceeded 25 percent of the market value of the structure at the time of each flood loss.

(d) In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

(2) Be a structure that has had flood-damage in which the cost to repair equals or exceeds 50 percent of the market value of the structure at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

b. This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the National Flood Insurance Program found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

(1) 3.a.(1) above.

(2) Elevation or floodproofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations or is enforcing elevation or floodproofing requirements for flood-damaged structures to elevations derived solely by the community.

(3) Elevation or floodproofing above the base flood elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the base flood elevation.

c. Under the minimum NFIP criteria at 44 CFR 60.3, States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the base flood elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage D.

d. This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding to the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g. below.

e. This coverage will also pay to bring a flood-damaged structure into compliance with State or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

### 4. Conditions

a. When a structure covered under Coverage A – Building Property sustains a loss caused by a flood, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish

and clear the site of the building debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

b. When the building is repaired or rebuilt, it must be intended for the same occupancy as the present building unless otherwise required by current floodplain management ordinance or laws.

### 5. Exclusions

Under this Coverage D – Increased Cost of Compliance, we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the Emergency Program.

b. The cost associated with enforcement of any ordinance or law that requires any hazard or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

c. The loss in value to any insured building or other structure due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a building demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

(1) Until the building is elevated, floodproofed, demolished, or relocated on the same or to another premises; and

(2) Unless the building is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed 2 years (see 3.b.).

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or improvements made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the NFIP's minimum requirements. This includes any situation where you have received from the State or community a variance in connection with the current flood loss to rebuild the property to an elevation below the base flood elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any structure insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a condominium association on individual condominium unit owners to pay increased costs of repairing commonly owned buildings after a flood in compliance with State or local floodplain management ordinances or laws.

### 6. Other Provisions

a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80 percent insurance-to-value requirement for replacement cost coverage as set forth in VII. General Conditions, V. Loss Settlement.

b. All other conditions and provisions of this policy apply.

## IV. PROPERTY NOT COVERED

We do not cover any of the following property:

1. Personal property not inside the fully enclosed building;

2. A building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a building used as a boathouse or any structure or building into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in II.B.6.c., whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

a. Used mainly to service the described location, or

b. Designed and used to assist handicapped persons,

while the vehicles or machines are inside a building at the described location;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, records, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. Buildings or units and all their contents if more than 49 percent of the actual cash value of the building or unit is below ground, unless the lowest level is at or above the base flood elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these acts;

16. Personal property you own in common with other unit owners comprising the membership of a condominium association.

## V. EXCLUSIONS

A. We only provide coverage for direct physical loss by or from flood, which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or described location;

3. Loss of use of the insured property or described location;

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage D - Increased Cost of Compliance; or

7. Any other economic loss.

B. We do not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date:

1. The policy term begins; or

2. Coverage is added at your request.

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land areas; or

6. Gradual erosion.

We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see II.A.1.c. and II.A.2.).

D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

   a. Substantially confined to the dwelling; or
   b. That is within your control, including but not limited to:
      (1) Design, structural, or mechanical defects;
      (2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or
      (3) Failure to inspect and maintain the property after a flood recedes;

5. Water or waterborne material that:

   a. Backs up through sewers or drains;
   b. Discharges or overflows from a sump, sump pump, or related equipment; or
   c. Seeps or leaks on or through the covered property;

   unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water;

6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspire to do to cause loss by flood deliberately; or

10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

F. We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance.

## VI. DEDUCTIBLES

A. When a loss is covered under this policy, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the Declarations Page.

However, when a building, its construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed building.

B. In each loss from flood, separate deductibles apply to the building and personal property insured by this policy.

C. The deductible does not apply to:

1. III.C.2. Loss Avoidance Measures;

2. III.C.3. Condominium Loss Assessments; or

3. III.D. Increased Cost of Compliance.

## VII. GENERAL CONDITIONS

A. Pairs and Sets

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation; or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

B. Concealment or Fraud and Policy Voidance

1. With respect to all insureds under this policy, this policy:

   a. Is void;
   b. Has no legal force or effect;
   c. Cannot be renewed; and
   d. Cannot be replaced by a new NFIP policy;

   if, before or after a loss, you or any other insured or your agent have at any time:

      (1) Intentionally concealed or misrepresented any material fact or circumstance;
      (2) Engaged in fraudulent conduct; or
      (3) Made false statements;

   relating to this policy or any other NFIP insurance.

2. This policy will be void as of the date the wrongful acts described in B.1. above were committed.

3. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

4. This policy is also void for reasons other than fraud, misrepresentation, or wrongful act. This policy is void from its inception and has no legal force under the following conditions:

   a. If the property is located in a community that was not participating in the NFIP on the policy's inception date and did not join or reenter the program during the policy term and before the loss occurred; or
   b. If the property listed on the application is otherwise not eligible for coverage under the NFIP.

C. Other Insurance

1. If a loss covered by this policy is also covered by other insurance that includes flood coverage not issued under the Act, we will not pay more than the amount of insurance that you are entitled to for loss, damaged, or destroyed property insured under this policy subject to the following:

   a. We will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss, unless C.1.b. or c. immediately below applies.
   b. If the other policy has a provision stating that it is excess insurance, this policy will be primary.
   c. This policy will be primary (but subject to its own deductible) up to the deductible in the other flood policy (except another policy as described in C.1.b. above). When the other deductible amount is reached, this policy will participate in the same proportion that the amount of insurance under this policy bears to the total amount of both policies, for the remainder of the loss.

2. If there is other insurance in the name of your condominium association covering the same property covered by this policy, then this policy will be in excess over the other insurance.

D. Amendments, Waivers, Assignment

This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this policy constitutes a waiver of any of our rights. You may assign this policy in writing when you transfer title of your property to someone else, except under these conditions:

1. When this policy covers only personal property; or

2. When this policy covers a structure during the course of construction.

E. Cancellation of Policy by You

1. You may cancel this policy in accordance with the applicable rules and regulations of the NFIP.

2. If you cancel this policy, you may be entitled to a full or partial refund of premium also under the applicable rules and regulations of the NFIP.

F. Nonrenewal of the Policy by Us

Your policy will not be renewed:

1. If the community where your covered property is located stops participating in the NFIP; or

2. If your building has been declared ineligible under Section 1316 of the Act.

G. Reduction and Reformation of Coverage

1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.

2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:

a.  Discovery of insufficient premium or incorrect rating information before a loss.

    (1)  If we discover before you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

    (2)  If we determine before you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request. Once we determine the amount of additional premium for the current policy term, we will follow the procedure in G.2.a.(1) above.

    (3)  If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

b.  Discovery of insufficient premium or incomplete rating information after a loss.

    (1)  If we discover after you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior policy terms. If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.

    (2)  If we discover after you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior policy terms, we will follow the procedure in G.2.b.(1) above.

    (3)  If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3.  However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition B, Concealment or Fraud and Policy Voidance apply.

**H.  Policy Renewal**

1.  This policy will expire at 12:01 a.m. on the last day of the policy term.

2.  We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3.  If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

  a.  If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

  b.  If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

4.  In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most-recent application for or renewal of insurance.

**I.  Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

**J.  Requirements in Case of Loss**

In case of a flood loss to insured property, you must:

1.  Give prompt written notice to us;

2.  As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

3.  Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;

4.  Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

  a.  The date and time of loss;

  b.  A brief explanation of how the loss happened;

  c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

  d.  Details of any other insurance that may cover the loss;

  e.  Changes in title or occupancy of the covered property during the term of the policy;

  f.  Specifications of damaged buildings and detailed repair estimates;

g.  Names of mortgagees or anyone else having a lien, charge, or claim against the covered property;

h.  Details about who occupied any insured building at the time of loss and for what purpose; and

i.  The inventory of damaged personal property described in J.3. above.

5.  In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6.  You must cooperate with the adjuster or representative in the investigation of the claim.

7.  The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8.  We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9.  At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

**K.  Our Options After a Loss**

Options we may, in our sole discretion, exercise after loss include the following:

1.  At such reasonable times and places that we may designate, you must:

  a.  Show us or our representative the damaged property;

  b.  Submit to examination under oath, while not in the presence of another insured, and sign the same; and

  c.  Permit us to examine and make extracts and copies of:

    (1)  Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

    (2)  Condominium association documents including the Declarations of the condominium, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a unit owner in a condominium building; and

    (3)  All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2.  We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

  a.  Quantities and costs;

  b.  Actual cash values or replacement cost (whichever is appropriate);

  c.  Amounts of loss claimed;

  d.  Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and

  e.  Evidence that prior flood damage has been repaired.

3.  If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

  a.  Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and

  b.  Take all or any part of the damaged property at the value we agree upon or its appraised value.

**L.  No Benefit to Bailee**

No person or organization, other than you, having custody of covered property will benefit from this insurance.

**M.  Loss Payment**

1.  We will adjust all losses with you. We will pay you unless some other person or entity is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

  a.  We reach an agreement with you;

  b.  There is an entry of a final judgment; or

  c.  There is a filing of an appraisal award with us, as provided in VII.P.

2.  If we reject your proof of loss in whole or in part you may:

  a.  Accept our denial of your claim;

  b.  Exercise your rights under this policy; or

  c.  File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

**N.  Abandonment**

You may not abandon to us damaged or undamaged property insured under this policy.

**O.  Salvage**

We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the policy by the value of the salvage.

**P.  Appraisal**

If you and we fail to agree on the actual cash value or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the covered property is located. The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss, or if it applies, the replacement cost and loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

Q.  Mortgage Clause

The word "mortgagee" includes trustee.

Any: loss payable under Coverage A - Building Property will be paid to any mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1.  Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

2.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

3.  Submits a signed, sworn proof of loss within 60 days after receiving notice of your failure to do so.

All of the terms of this policy apply to the mortgagee.

The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.

If we decide to cancel or not renew this policy, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or nonrenewal.

If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

R.  Suit Against Us

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

S.  Subrogation

Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other-person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

T.  Continuous Lake Flooding

1.  If your insured building has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured building equal to or greater than the building policy limits plus the deductible or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

    a.  To make no further claim under this policy;

    b.  Not to seek renewal of this policy;

    c.  Not to apply for any flood insurance under the Act for property at the described location; and

    d.  Not to seek a premium refund for current or prior terms.

    If the policy term ends before the insured building has been flooded continuously for 90 days, the provisions of this paragraph T.1. will apply when the insured building suffers a covered loss before the policy term ends.

2.  If your insured building is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph T.1. above or paragraph T.2. (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded 1 square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overlap their basins or rims occasionally.) Under this paragraph T.2. we will pay your claim as if the building is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

    a.  Lake flood waters must damage or imminently threaten to damage your building.

    b.  Before approval of your claim, you must:

        (1)  Agree to a claim payment that reflects your paying back the salvage on a negotiated basis; and

        (2)  Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes" to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for flood damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures that it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the NFIP and are insured under the NFIP, they will not be eligible for the benefits of this paragraph T.2. if a U.S. Army Corps of Engineers certified flood control project or otherwise certified flood control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the easement removed from the ASC; and

(3)  Comply with all phases T.1.c. through T.1.d. above.

c.  Within 90 days of approval of your claim, you must move your building to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show that there is sufficient reason to extend the time.

d.  Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your building.

e.  Before the approval of your claim, the community having jurisdiction over your building must:

    (1)  Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified in the easement required in paragraph T.2.b. above.

    (2)  Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the building can be denied; and

    (3)  Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph T.2.b. above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a nonprofit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph T.2.b. above.

f.  Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

g.  You must have NFIP flood insurance coverage continuous in effect from a date established by FEMA until you file a claim under paragraph T.2. If a subsequent owner buys NFIP insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph T.2., we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

h.  This paragraph T.2. will be in effect for a community when the FEMA Regional Director for the affected region provides in the community, in writing, the following:

    (1)  Confirmation that the community and the State are in compliance with the conditions in paragraphs T.2.c. and T.2.f. above; and

    (2)  The date by which you must have flood insurance in effect.

U.  Duplicate Policies Not Allowed

1.  We will not insure your property under more than one NFIP policy.

If we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of several options under the following procedures:

a.  If you choose to keep in effect the policy with the earlier effective date, you may also choose to add the coverage limits of the later policy to the limits of the earlier policy. The change will become effective as of the effective date of the later policy.

b.  If you choose to keep in effect the policy with the later effective date, you may also choose to add the coverage limits of the earlier policy to the limits of the later policy. The change will be effective as of the effective date of the later policy.

In either case, you must pay the pro rata premium for the increased coverage limits within 30 days of the written notice. In no event will the resulting coverage limits exceed the permissible limits of coverage under the Act or your insurable interest, whichever is less.

We will make a refund to you, according to applicable NFIP rules, of the premium for the policy not being kept in effect.

2.  Your option under Condition U. Duplicate Policies Not Allowed to elect which NFIP policy to keep in effect does not apply when duplicates have been knowingly created. Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier policy. The policy with the later effective date will be canceled.

V.  Loss Settlement

1.  Introduction

This policy provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and Actual Cash Value. Each method is used for a different type of property, as explained in a.-c. below.

a.  Replacement Cost loss settlement, described in V.2. below, applies to a single-family dwelling provided:

    (1)  It is your principal residence, which means that, at the time of loss, you or your spouse lived there for at least 80 percent of:

        (a)  The 365 days immediately preceding the loss; or

        (b)  The period of your ownership, if you owned the dwelling for less than 365 days; and

    (2)  At the time of loss, the amount of insurance in this policy that applies to the dwelling is 80 percent or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the NFIP.

b.  Special loss settlement, described in V.3. below, applies to a single-family dwelling that is a manufactured or mobile home or a travel trailer.

c.  Actual Cash Value loss settlement applies to a single-family dwelling not subject to replacement cost or special loss settlement, and to the property listed in V.4. below.

2.  Replacement Cost Loss Settlement

The following loss settlement conditions apply to a single-family dwelling described in V.1.a. above:

a.  We will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

Policy Number: 87056842942015



**FARMERS**
INSURANCE

# FLOOD POLICY DECLARATIONS
## Texas Farmers Insurance Company

Preferred Risk

**Type:** New Business
**Policy Period:** 11/28/2015 To 11/28/2016
**Form:** Dwelling

For payment status, call: (800) 637-3846
These Declarations are effective
as of: 11/28/2015 at 12:01 AM

---

**Producer Name and Mailing Address:**
AUSTIN BRADSHAW
1111 S MAIN ST STE 122
GRAPEVINE, TX 76051-5577

**Insured Name and Mailing Address:**
Member Id: 974118680
FARHAT, MIKE
600 N CARROLL AVE STE 160
SOUTHLAKE, TX 76092-6497

**Agent/Agency #:** 3553325
**Reference #:** 08811-05088-000
**Phone #:** (817) 424-3773

**Processed by:**
Flood Insurance Processing Center
P.O. Box 2057  Kalispell MT 59903-2057

---

**Property Location:**
1060 HARBOR HAVEN ST
SOUTHLAKE, TX 76092-2809

**Primary Residence:** Y
**Premium Payor:** Insured
**Flood Risk/Rated Zone:** X     **Current Zone:**
**Community Number:** 48 0612 0085 K
**Community Name:** SOUTHLAKE, CITY OF
**Grandfathered:** No
**Post-Firm Construction**
**Program Type:** Regular

**Building Description:**
Single Family
Two Floors
No Basement/Enclosure/Crawlspace
Main House
House

**Elev Diff:** N/A
**Elevated Building:** N
Includes Addition(s) and Extension(s)
**Replacement Cost:** $998,000
**Number of Units:** 1

---

| | | | | | | |
|---|---|---|---|---|---|---|
| 250,000 | / | 1,250 | | | | 348.00 |
| 100,000 | / | 1,250 | | | | .00 |
| Lowest Floor Above Ground | | | | | | .00 |
| Level and Higher Floors | | | | | | 35.00 |
| | | | | | | 25.00 |
| | | | | | | 22.00 |
| | | | | | | .00 |
| | | | | | | .00 |

Coverage Limitations May Apply. See Your Policy Form for Details.                    430.00

---

**First Mortgage:**

**Loss Payee:**

**Second Mortgage:**

**Disaster Agency:**

003031 105629 005876 011752 01 / 05

---

This Declaration Page, in conjunction with the policy, constitutes your Flood Insurance Policy.
In WITNESS WHEREOF, we have signed this policy below and hereby enter into this Insurance Agreement.

_Ron Myhan_
Vice President & Treasurer

_Doren E. Hall_
Secretary

87056842942015   11/13/2015        Texas Farmers Insurance Company        FCOLOGO_INS_3N_OXP_000012419244

# Farmers. Privacy Notice

*In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it. We value your confidence in us.*

You trust us with an important part of your financial life. We are proud of our privacy policies and procedures and encourage you to review them carefully.

This notice from the member companies of the Farmers Insurance Group of Companies *listed on the back of this notice* describes our privacy practices regarding information about our customers and former customers that obtain financial products or services from us for personal, family or household purposes. *When state law is more protective of individuals than federal privacy law, we will protect information in accordance with state law consistent with the requirements of federal preemption.*

## Information we collect

We collect and maintain information about you to provide you with the coverage, product or service you request and to service your account.

We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:

- Information we receive from you on applications or other forms, such as your social security number, assets, income and property information;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;
- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and
- If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations regarding your health.

## How we protect your information

At Farmers, our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees and agents, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.

We do not disclose any nonpublic personal information about you, as our customer or former customer, except as described in this notice.

## Information we disclose

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law.

Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will abide by the privacy restrictions imposed by that organization.

We are permitted to disclose personal health information (1) to process your transaction with us, for instance, to determine eligibility for coverage, to process claims or to prevent fraud; (2) with your written authorization, and (3) otherwise as permitted by law.

## Sharing information with affiliates

The Farmers family encompasses various affiliates that offer a variety of financial products and services in addition to insurance. Sharing information enables our affiliates to offer you a more complete range of products and services.

 25-7660 8-12

*(Continued on next page)*

A7660701



We may disclose nonpublic personal information, as described under **Information we collect**, to our affiliates, which include:

- Financial service providers such as insurance companies and reciprocals, investment companies, underwriters and brokers/dealers; and
- Non-financial service providers, such as management companies, attorneys-in-fact and billing companies.

We are permitted by law to share with our affiliates information about our transactions and experiences with you. In addition, we may share with our affiliates consumer report information, such as information from credit reports and certain application information, that we have received from you and from third parties, such as consumer reporting agencies and insurance support organizations.

## Your choice

If it is your decision not to opt-out and to allow sharing of your information with our affiliates, you do not need to request an Opt-Out Form or respond to us in any way.

**If you have previously submitted a request to opt-out on each of your policies, no further action is required.** If you prefer that we not share consumer report information with our affiliates, except as otherwise permitted by law, you may request an Opt-Out Form by calling toll free, 1-800-327-6377, (please have all of your policy numbers available when requesting Opt-Out Forms). A form will be mailed to your attention. Please verify that all of your Farmers policy numbers are listed. If not, please add the policy numbers on the form and mail to the return address printed on the form. We will implement your request within a reasonable time after we receive the form.

## Modifications to our privacy policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised privacy notice and give you the opportunity to opt-out of that type of information sharing.

## Website

Our website privacy notices, such as the one located at farmers.com, contain additional information particular to website use. Please pay careful attention to those notices if you transmit personal information to Farmers over the Internet.

## Recipients of this notice

We are providing this notice to the named policyholder residing at the mailing address to which we send your policy information. If there is more than one policyholder on a policy, only the named policyholder on that policy will receive this notice, though any policyholder may request a copy of this notice. You may receive more than one copy of this notice if you have more than one policy with Farmers. You also may receive notices from affiliates, other than those listed below. Please read those notices carefully to determine your rights with respect to those affiliates' privacy practices.

## More Information about the federal laws

This notice is required by federal law. If you would like additional information about these federal laws, please visit our website at farmers.com.

## Signed:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.); Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc.; Farmers New Century Insurance Company, Farmers Group, Inc.; Farmers Reinsurance Company, Farmers Services Insurance Agency, Farmers Services Corporation, Farmers Texas County Mutual Insurance Company, Farmers Underwriters Association, Farmers Value Added, Inc.; Farmers Financial Solutions, LLC member FINRA & SIPC**; FFS Holding, LLC; Farmers Services, LLC; ZFUS Services, LLC; Leschi Life Assurance Company, FIG Holding Company, FIG Leasing Co., Inc.; Fire Underwriters Association, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Prematic Service Corporation (California), Prematic Service Corporation (Nevada), Texas Farmers Insurance Company, Farmers New World Life Insurance Company, Truck Underwriters Association, Civic Property and Casualty Company, Exact Property and Casualty Company and Neighborhood Spirit Property and Casualty Company.

*The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the Farmers Insurance Group of Companies.
**You may obtain more information about the Securities Investor Protection Corporation (SIPC) including the SIPC brochure by contacting SIPC at (202) 371-8300 or via the internet at www.sipc.org. For information about FINRA and Broker Check you may call the FINRA Broker Check hotline at (800) 289-9999 or access the FINRA website at www.finra.org.

A7660702

## IMPORTANT INFORMATION ABOUT THE
## NATIONAL FLOOD INSURANCE PROGRAM

Federal law requires insurance companies that participate in the National Flood Insurance
Program to provide you with the enclosed Summary of Coverage. It's important to understand
that the Summary of Coverage provides only a general overview of the coverage afforded under
your policy. You will need to review your flood insurance policy, Declarations Page, and any
applicable endorsements for a complete description of your coverage. The enclosed Declarations
Page indicates the coverage you purchased, your policy limits, and the amount of your deductible.

You will soon receive additional information about the National Flood Insurance Program. This
Information will include a Claims Handbook, a history of flood losses that have occurred on your
property, as contained in FEMA's data base, and an acknowledgement letter.

If you have any questions about your flood insurance policy, please contact your agent or
Insurance company [which ever is applicable, to be supplied by the WYO company]



# FEMA
## National Flood Insurance Program
## Summary of Coverage

### Two Types of Flood Insurance Coverage

The NFIP's Dwelling Form offers coverage for: 1. Building Property, up to $250,000, and 2. Personal Property (Contents), up to $100,000. The NFIP encourages people to purchase both types of coverage. Your mortgage company can require that you purchase a certain amount of flood insurance coverage.

**For information about your specific limits of coverage and deductibles, refer to the Declarations Page in your flood insurance policy. It's also a good idea to review your policy with your insurance agent or company representative.**

## What is a Flood?

Flood insurance covers direct physical loss caused by "flood." In simple terms, a flood is an excess of water on land that is normally dry. Here's the official definition used by the National Flood Insurance Program.

A flood is "A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

- Overflow of inland or tidal waters;

- Unusual and rapid accumulation or runoff of surface waters from any source;

- Mudflow*; or

- Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined above."

*Mudflow is defined as "A river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water..."

## Three Important Facts About Your Flood Policy

A Standard Flood Insurance Policy is a single-peril (flood) policy that pays for direct physical damage to your insured property up to the replacement cost or Actual Cash Value (ACV) (See "How Flood Damages Are Valued") of the actual damages or the policy limit of liability, whichever is less.

1. **Contents coverage must be purchased separately.**

2. **It is not a valued policy.** A valued policy pays the limit of liability in the event of a total loss. For example: Your home is totally destroyed by a fire and it costs $150,000 to rebuild. If your homeowners insurance policy is a valued policy with a $200,000 limit of liability on the building, you would receive $200,000. Flood insurance pays just the replacement cost or ACV of actual damages, up to the policy limit.

3. **It is not a guaranteed replacement cost policy.** A guaranteed replacement cost policy pays the cost to rebuild your home regardless of the limit of liability. For example: Your home is totally destroyed by a fire and it costs $200,000 to rebuild. If your homeowners insurance policy is a guaranteed replacement cost policy with a $150,000 limit of liability on the building, you would receive $200,000. Flood insurance does not pay more than the policy limit.

1

## Choosing Deductibles

Choosing the amount of your deductibles is an important decision. As with car or homeowners insurance, choosing a higher deductible will lower the premium you pay, but will also reduce your claim payment.

You can normally choose different deductibles for Building Property and Personal Property coverage. The deductibles will apply separately to Building Property and Personal Property claims. Your mortgage company can require that your deductible is no more than a certain amount.

Review the Declarations Page in your flood insurance policy for amounts of coverage and deductibles. Talk with your insurance agent, company representative, or lender about raising or lowering deductibles.

### Reminder: Keep Your Receipts

While you are not expected to keep receipts for every household item and article of clothing, do try to keep receipts for electronic equipment, wall-to-wall carpeting, major appliances, and other higher cost items. Your adjuster will be able to process your claim more quickly when you can prove how much items cost at the time of purchase.

## What is Covered by Flood Insurance – and What's Not

Generally, physical damage to your building or personal property "directly" caused by a flood is covered by your flood insurance policy. For example, damages caused by a sewer backup are covered if the backup is a direct result of flooding. However, if the backup is caused by some other problem, the damages are not covered.

The following charts provide general guidance on items covered and not covered by flood insurance. Refer to your policy for the complete list.

### General Guidance on Flood Insurance Coverage

**What is insured under Building Property coverage**
- The insured building and its foundation.
- The electrical and plumbing systems.
- Central air conditioning equipment, furnaces, and water heaters.
- Refrigerators, cooking stoves, and built-in appliances such as dishwashers.
- Permanently installed carpeting over an unfinished floor.
- Permanently installed paneling, wallboard, bookcases, and cabinets.
- Window blinds.
- Detached garages (up to 10 percent of Building Property coverage). Detached buildings (other than garages) require a separate Building Property policy.
- Debris removal.

**What is insured under Personal Property coverage**
- Personal belongings such as clothing, furniture, and electronic equipment.
- Curtains.
- Portable and window air conditioners.
- Portable microwave ovens and portable dishwashers.

- Carpets not included in building coverage (see above).
- Clothes washers and dryers.
- Food freezers and the food in them.
- Certain valuable items such as original artwork and furs (up to $2,500).

**What is not insured by either Building Property or Personal Property coverage**
- Damage caused by moisture, mildew, or mold that could have been avoided by the property owner.
- Currency, precious metals, and valuable papers such as stock certificates.
- Property and belongings outside of a building such as trees, plants, wells, septic systems, walks, decks, patios, fences, seawalls, hot tubs, and swimming pools.
- Living expenses such as temporary housing.
- Financial losses caused by business interruption or loss of use of insured property.
- Most self-propelled vehicles such as cars, including their parts (see Section IV.5 in your policy).

2

## General Guidance on Flood Insurance Coverage Limitations In Areas Below the Lowest Elevated Floor and Basements

Flood insurance coverage is limited in areas below the lowest elevated floor (including crawlspaces) depending on the flood zone and date of construction (refer to Part III, Section A.8 in your policy) and in basements regardless of zone, or date of construction. As illustrated below, these areas include 1. basements, 2. crawlspaces under an elevated building, 3. enclosed areas beneath buildings elevated on full story foundation walls that are sometimes referred to as "walkout basements," and 4. enclosed areas under other types of elevated buildings.

### What is insured under Building Property coverage
- Foundation walls, anchorage systems, and staircases attached to the building.
- Central air conditioners.
- Cisterns and the water in them.
- Drywall for walls and ceilings (in basements only).
- Nonflammable insulation (in basements only).
- Electrical outlets, switches, and circuit breaker boxes.
- Fuel tanks and the fuel in them, solar energy equipment, well water tanks and pumps.
- Furnaces, hot water heaters, heat pumps, and sump pumps.

### What is insured under Personal Property coverage
- Washers and dryers.
- Food freezers and the food in them (but not refrigerators).
- Portable and window air conditioners.

### What is not insured by either Building Property or Personal Property coverage
- Paneling, bookcases, and window treatments such as curtains and blinds.
- Carpeting, area carpets, and other floor coverings such as tile.
- Drywall for walls and ceilings (below lowest elevated floor).
- Walls and ceilings not made of drywall.
- Most personal property such as clothing, electronic equipment, kitchen supplies, and furniture.



**1. BASEMENTS**

Coverage limitations apply to "basements," which are any area of the building, including a sunken room or sunken portion of a room, having its floor below ground level on all sides.



**2. CRAWLSPACE**

When a building is elevated on foundation walls, coverage limitations apply to the "crawlspace" below.



**3. ELEVATED BUILDING ON FULL STORY FOUNDATION WALLS**

Coverage limitations apply to the enclosed areas (lower floor) even when a building is constructed with what is sometimes called a "walkout basement."



**4. ELEVATED BUILDING WITH ENCLOSURE**

Coverage limitations apply to "enclosed areas" at ground level under an "elevated building." An elevated building allows water to flow freely under the living quarters, thus putting less strain on the building in the event of flooding. An "enclosure" is the area below the lowest elevated floor that is fully shut in by rigid walls.



3

## How Flood Damages Are Valued

The value of flood damage in the Dwelling Form is based on either Replacement Cost Value (RCV) or Actual Cash Value (ACV).

**Replacement Cost Value (RCV)**

Replacement Cost Value (RCV) is the cost to replace that part of a building that is damaged (without depreciation). To be eligible, three conditions must be met:

1. The building must be a single-family dwelling, and
2. Be your principal residence, meaning you live there at least 80 percent of the year, and
3. Your building coverage is at least 80 percent of the full replacement cost of the building, or is the maximum available for the property under the NFIP.

**Actual Cash Value (ACV)**

Actual Cash Value (ACV) is Replacement Cost Value at the time of loss, less the value of its physical depreciation.

Some building items such as carpeting are always adjusted on an ACV basis. For example, wall-to-wall carpeting could lose between 10–14 percent of its value each year, depending on the quality of the carpeting. This depreciation would be factored in the adjustment.

Personal property is always valued at ACV.

## Special Considerations for Multiple Claims

Property owners of "severe repetitive loss properties" may be eligible for a FEMA mitigation grant for property improvements that reduce the likelihood of future flood damages. Property owners who refuse the grant money could be required to pay increased flood insurance premiums.

A property is defined as a "severe repetitive loss property" when it meets one of these conditions:

1. Four or more separate flood claim payments have been made and each claim payment exceeds $5,000, or
2. At least two flood claim payments have been made and the cumulative payments exceed the value of the property.

**A final note**

This document provides general information about flood insurance coverage. However, please be aware that your Standard Flood Insurance Policy, your application, and any endorsements, including the Declarations Page, make up your official contract of insurance. Any differences between this information and your policy will be resolved in favor of your policy. If you have questions, call your insurance agent or company representative.


**FEMA**

### WHAT IS INCREASED COST OF COMPLIANCE (ICC) COVERAGE?

Most NFIP policies include ICC coverage, which applies when flood damages are severe. ICC coverage provides up to $30,000 of the cost to elevate, demolish, or relocate your home. If your community declares your home "substantially damaged" or "repetitively damaged" by a flood, it will require you to bring your home up to current community standards.

The total amount of your building claim and ICC claim cannot exceed the maximum limit for Building Property coverage ($250,000 for a single-family home). Having an ICC claim does not affect a Personal Property claim (up to $100,000), which is paid separately.

Details about eligibility are in Part III, Section D of your policy.

Congress created the National Flood Insurance Program (NFIP) in 1968 to reduce future flood damage through floodplain management, and to provide people with flood insurance through individual agents and insurance companies. The Federal Emergency Management Agency (FEMA) manages the NFIP. As required by Congress, this document was prepared by the NFIP to help flood insurance policyholders understand their policy.

4

# Texas Farmers Insurance Company



This cover/signature page, the declarations page, and the enclosed policy form are considered the entire Insurance Agreement and constitutes your Flood Insurance Policy.

IN WITNESS WHEREOF, we have signed this *policy* below and hereby enter into this Insurance Agreement.

Ronald D. Myhan
Vice President & Treasurer

Doreen E. Hall
Secretary

92201_21660_FIREINS_8811



## Flood information worksheet

Name: _____

Telephone: _____

Email: _____

Property
location: _____

_____

_____

Coverage
requested: _____

Building: _____

Contents: _____

Deductible: _____

### Waiver of coverage

I hereby certify that my agent offered flood insurance
coverage in the National Flood Insurance Program. I have
elected to take the following action:

☐ I reject flood insurance for the building and contents at
the property location referenced above.

☐ I reject flood insurance for contents.

☐ I reject flood insurance for the building at the property
location above (for condominium unit owners and
tenant-occupied buildings).

_____
Property owner's signature

_____
Date

## Personal service

These days, many insurance companies deal with their
customers only through email, mail or phone. But at
Farmers, you can also *meet* with an agent who will help
you every step of the way.

● Your Farmers agent can help you assess your
needs and find the coverage you want.

● You won't be alone when you file a claim or need
assistance — you'll deal directly with your Farmers
agent or our Flood Service Center.

● Periodically, your agent can provide a Farmers Friendly
Review® to help you review and update your coverage
if you wish.

### HelpPoint® Claim Services by Farmers

Whenever you have a claim, call HelpPoint® Claim Services
by Farmers at (800) HelpPoint — (800) 435-7764. In the
unlikely event you experience a loss, HelpPoint is available
24 hours a day, seven days a week.

HelpPoint is also available in Spanish and for the
hearing impaired.



NATIONAL FLOOD
INSURANCE PROGRAM

33-0247     3-13



**FARMERS**
Los Angeles, CA 90051-2478
*farmers.com*

# Flood
# insurance

## Coverage for your home ●
## and business

**FARMERS**

# Get the facts and know your risk

Devastating floods occur throughout the United States every year. Heavy rains, clogged or inadequate drainage systems, nearby construction projects, broken water mains and inadequate levees and dams can cause flooding, which puts your home and belongings at risk.

On average, flooding causes more than $2 billion in property damage a year.[1] Fortunately, flood insurance is available to cover homes, businesses and their contents through the National Flood Insurance Program (NFIP).

Here are some myths and facts about flood insurance:

**Myth:** "It won't happen to me."
**Fact:** Anywhere it rains, it can flood. You don't have to live by water to be at risk. Approximately 20 percent of all flood claims occur in low- to moderate-risk areas.[1] So, remember – everyone lives in a flood zone.

**Myth:** "My homeowners insurance is enough."
**Fact:** Most homeowners insurance doesn't cover flood damage — federal flood insurance does. Flood insurance also covers damage from mud flow, dirt and debris resulting from moving water.

**Myth:** "The government will pay."
**Fact:** To receive federal disaster assistance, a flood must first be declared a federal disaster by the President of the United States. Less than 50 percent of the floods that damage homes across the country every year wind up being classified as federal disasters.[1] The most common form of federal disaster assistance is a loan that must be repaid with interest.

**Myth:** "Flood insurance is expensive."
**Fact:** Flood insurance is affordable. Flood damage isn't. In 2011 alone, flood insurance claims in the United States were nearly $1.9 billion, with an average claim of $31,679. Compare this to the average annual flood premium of $622 and premium for homes in low- to moderate-risk areas for as little as $129 a year.[1]

Flood insurance up to $250,000 is available for residential buildings and up to $500,000 for commercial buildings. Since the NFIP is a federal program, all covered claims are backed by the U.S. government.

**Myth:** "Flood insurance covers my home and its contents."
**Fact:** The standard flood policy doesn't automatically cover the contents of your home. Separate contents coverage must be purchased and is available up to $100,000. Preferred risk policies for structures in low- to moderate-risk areas offer "combination coverage" of up to $250,000 for a residence and $100,000 for its contents. A separate contents deductible applies on all contents claims.

**Myth:** "Flood insurance is only available for homeowners.".
**Fact:** Most people who live in NFIP-participating communities, including renters, condo owners and business owners, are eligible to purchase federally-backed flood insurance.

**Myth:** "You can't buy flood insurance if you're located in a high-flood-risk area."
**Fact:** You can buy national flood insurance no matter where you live if your community participates in the NFIP, except in Coastal Barrier Resources System areas. (Ask your Farmers® agent if your community participates.)

**Myth:** "I can buy flood insurance anytime."
Floods can happen anytime. However, in most cases, there's a 30-day waiting period between purchasing a flood policy and being covered by it. Ask your Farmers agent to secure coverage for your home and possessions so you can enjoy the peace of mind that comes from knowing you're covered.

[1]. *FEMA (Federal Emergency Management Agency) and NFIP (National Flood Insurance Program) statistics as 2011.*



Texas Farmers Insurance Co.
Flood Insurance Processing Center
P.O. Box 2057, Kalispell, MT 59903-2057
Phone: (800) 759-8656   Fax: (866) 528-3252

December 21, 2015

Farhat, Mike
600 N Carroll Ave Ste 160
Southlake, TX 76092-6497

RE: Insured      : Farhat, Mike
    Property Add: 1060 Harbor Haven St
                  Southlake, TX 76092-2809
    Policy #     : 87056842942015
    Date of Loss : 11/28/2015
    Reference No : 87-05684294-2015

Dear Insured:

The adjuster's final report indicates there was no apparent evidence of a general and temporary condition of flooding in the area. We are denying any damages to the property, pursuant to the Standard Flood Insurance Policy:

II.  Definitions

    A. Flood, as used in this flood insurance policy, means:

        1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

            a. Overflow of inland or tidal waters;
            b. Unusual and rapid accumulation of runoff of surface waters from any source;
            c. Mudflow.

        2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a above.

    B.12. Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

V.  Exclusions

    D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

        1. The pressure or weight of ice;
        2. Freezing or thawing;
        3. Rain, snow, sleet, hail, or water spray;
        4. Water, moisture, mildew, or mold damage that results primarily from any condition;

            a. Substantially confined to the dwelling; or



      b. That is within your control, including but not limited to:
         (1) Design, structural, or mechanical defects;
         (2) Failure, stoppage or breakage of water or sewer lines, drains,
            pumps, fixtures, or equipment; or
         (3) Failure to inspect and maintain the property after a flood recedes;

    8. Theft, fire, explosion, wind, or windstorm;

The Standard Flood Insurance Policy is a federal policy under the jurisdiction of the
federal government issued pursuant to the National Flood Insurance Act of 1968 and
applicable federal regulations in Title 44 of the Code of Federal Regulations,
Subchapter B.

If you do not agree with your insurer's decision to deny your claim, in whole or in
part, Federal law allows you to appeal that decision within 60 days of the date of
this denial letter. Your appeal must be in writing and include: a copy of this letter,
a copy of the completed Proof of Loss form you submitted to the insurer, your written
statement of the basis for the appeal and all the documentation which supports your
written statement.

The appeal must be sent to:

    Federal Emergency Management Agency
    Mitigation Directorate
    Federal Insurance Administrator
    1800 South Bell Street
    Arlington, VA 20598-3010

You should not appeal your claim or any part of it, unless it has been denied by this
letter. If you do and your claim has not been denied; in whole or in part, FEMA will
return your appeal to you for not complying with their regulation. If you disagree
with your insurance settlement and the item of your disagreement is not denied by this
letter, you should submit a detailed request with the documentation which fully
supports your position directly to us for consideration as a supplemental claim. The
FEMA appeals process cannot overturn a denial when coverage is not afforded by the
Standard Flood Insurance Policy. Federal assistance may be available to you if your
flood loss is within a city or county included in a disaster declaration by the
President of the United States. In such cases you may contact FEMA at (800) 621-3362
or register online at http://www.fema.gov.

Pursuant to the Standard Flood Insurance Policy, VII. General Conditions, R. Suit
Against Us: You may not sue us to recover money under this policy unless you have
complied with all the requirements of the policy. If you do sue, you must start the
suit within 1 year after the date of the written denial of all or part of the claim,
and you must file the suit in the United States District Court of the district in
which the insured property was located at the time of loss. This requirement applies
to any claim that you may have under this policy and to any dispute that you may have
arising out of the handling of any claim under the policy.

You can find a copy of the Standard Flood Insurance Policy and the National Flood
Insurance Claims Handbook at http://www.fema.gov.

Waiving none, but reserving all rights and defenses under the policy, we remain,

Sincerely,

Flood Claims Department


cc: Austin Bradshaw
    Colonial Claims Corporation

                                                            :CWOP06

# BROWN PRUITT WAMBSGANSS FERRILL & DEAN, P.C.

### ATTORNEYS AND COUNSELORS AT LAW

C. HAROLD BROWN
CHRISTOPHER J. PRUITT
ANDREW L. WAMBSGANSS
DONALD A. FERRILL
RANDAL L. DEAN
MICHAEL L. FORMAN
SUSAN I. PAQUET
R. MARK OLIVER
MICHAEL J. MOORE
JAMES E. GRIFFIS
SHELLI A. HARVESON

ERIC C. FREEDY
MISTY M. PRATT
CHRISTOPHER T. NIZIWORSKI
HEATHER N. SUTTON
CAROLINE E. SMOCK
ALYSSA A. JACOBS
DANIEL J. PARET
ADAM D. CHILTON
MADDIE E. HILL
TAYLOR E. DARBY
MAXWELL B. BROWN

600 N CARROLL AVENUE, SUITE 100
SOUTHLAKE, TEXAS 76092
TELEPHONE 817.203.2000
FACSIMILE 817.203.2100

February 18, 2016

Federal Emergency Management Agency ("FEMA")
Mitigation Directorate
Federal Insurance Administrator
1800 South Bell Street
Arlington, VA 20598-3010
*Via FedEx*

RE:  **Appeal of Claim Denial**
   **Insured:** **Farhat, Mike**
   **Property Address:** **1060 Harbor Haven St.**
          **Southlake, Texas 76092-2809**
   **Policy Number:** **87056842942015**
   **Date of Loss:** **11/28/2015**
   **Reference Number:** **87-05684294-2015**

To Whom It May Concern:

Please be advised that Mike Farhat (hereinafter my "Client"), Policy No. 87056842942015, has retained the services of the undersigned law firm to prosecute his appeal of Texas Farmers Insurance Co.'s denial of his Standard Flood Insurance Policy claim. All future correspondences should be addressed to my attention.

My Client owns a piece of property commonly known as 1060 Harbor Haven St. Southlake, Texas 76092 (hereinafter the "Property"). The Property is approximately 2.6 acres in size. My Client's Property abuts portions of Lake Grapevine including areas owned by the Army Corps of Engineers. On or about November 26, 2015, northern portions of Tarrant County, Texas, including the cities of Southlake and Grapevine, experienced record rainfall. On November 26, 2015, the City of Southlake recorded 2.71 inches of precipitation.   On November 27, 2015, the City of Southlake recorded 3.45 inches of precipitation. On November 28, 2015, the City of Southlake recorded .99 inches of precipitation. A copy of the weather history reports for each of these days is attached hereto as Exhibit "A". This level of precipitation resulted in massive flooding in the City of Southlake. Several news publications addressing these floods are attached hereto as Exhibit "B".



EXHIBIT
F

The record level of precipitation caused several inland water sources and surface waters to overflow including Lake Grapevine and the surrounding creeks and waterways that flow into it. This overflow of inland waters and surface waters flowed over the road and caused several major roads in the area, including Dove Road, to close. Additionally, this overflow of inland waters and surface waters flowed onto and partially and/or completely inundated my Client's Property. At one point the water level rose to the bottom of the windows of my Client's home on the Property. Water then entered the home through the exterior bricks and slab and almost completely flooded the first floor of the home. Pictures of the Property after the flooding are attached hereto as Exhibit "C".

Prior to the flood, my Client purchased a Flood Insurance Policy through Texas Farmers Insurance Co. (hereinafter "TX Farmers Insurance"), Policy Number 87056842942015. The policy provided coverage for damage caused by "general and temporary conditions of flooding". The policy defined a flood as "A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from: (a) Overflow of inland or tidal waters; (b) Unusual and rapid accumulation of runoff of surface waters from any source; (c) Mudflow."

Shortly after noting the damage to the Property, my Client contacted TX Farmers Insurance and made a claim on such policy (Claim No. 370014). TX Farmers Insurance redirected the claim to Colonial Claims Corporation (hereinafter "Colonial") and sent a claims adjuster, Luke Chen, to the Property to inspect the damage. Neither TX Farmers Insurance nor Colonial provided my Client with a Proof of Loss form to submit.

On or about December 21, 2015, my Client received a letter from TX Farmers Insurance denying his claim against the policy. A copy of this letter is attached hereto as Exhibit "D". The letter cited the language of the policy regarding the definition of a flood and cited the exclusions to such policy. However, the letter did not specify the reason why such claim was denied and neither TX Farmers Insurance nor Colonial has provided a subsequent explanation for the denial of the claim.

My Client has been forced to expend substantial sums to mitigate the damages caused by the flood. My Client contracted Mooring Recovery Services, Inc. (hereinafter "Mooring") to provide emergency services to recover, service, and restore the Property. These services included tearing out the carpet and pad in the first floor bedroom, tearing out the insulation on the outside walls of the home, tearing out baseboards in all first floor rooms, tearing out all wet drywall in the home, and packing out the wine cabinet, bedroom, and garage. A copy of the services provided by Mooring along with the invoiced amounts is attached hereto as Exhibit "E".

The damage to the Property was directly attributable to an "overflow of inland waters" and/or an "unusual and rapid accumulation of runoff or surface water". Portions of Lake Grapevine and its surrounding creeks and streams overflowed and such water travelled onto and inundated my Client's Property. The Property contains 2.6 acres of "normally

dry land area". The claim was properly made under the terms of the policy. Therefore, the denial of coverage by TX Farmers Insurance is improper and in violation of the terms of the policy.

My Client respectfully requests that FEMA review this letter of appeal and the attached documents and reverse TX Farmers Insurance's denial of coverage under the policy. If you have any questions or would like additional documentation of such claim, please feel free to contact me via email at achilton@brownpruitt.com or by phone at (817) 203-2000.

Very Truly Yours,

Adam D. Chilton

ADC/jar



, **Department of Homeland Security**
Washington, DC 20472

June 15, 2016

Mike Farhat
600 N. Carroll Avenue
Suite 160
Southlake, Texas 76092

Dear Mr. Farhat:

The Department of Homeland Security, Federal Emergency Management Agency (FEMA) received a letter from Adam D. Chilton of Brown, Pruitt, Wambsganss, Ferrill, and Dean, P.C., dated February 18, 2016, appealing the decision by Texas Farmers Insurance Company (Texas Farmers), to deny your flood insurance claim for damage to the property located at 1060 Harbor Haven Street, Southlake, Texas, arising from the reported flood event of November 28, 2015.

Mr. Chilton did not confirm his assignment as your legal representative by providing us with a copy of the signed and notarized retainer agreement or contract therefore, we are responding directly to you.

Members of my staff examined the claim file from Texas Farmers, in conjunction with the issues addressed in the correspondence and supporting documents. You disputed the determination of Texas Farmers that damage sustained to the building was not a direct consequence of flooding as defined by the terms and coverage provisions of the Standard Flood Insurance Policy (SFIP) Section II Definitions Paragraph A.1.

The adjuster's site inspection report of December 1, 2015, indicated a general and temporary condition of flooding as defined by the SFIP could not be verified, noting that he found no physical evidence that flood waters made contact with the interior or exterior perimeter of the structure. In reviewing the claim file photographs depicting the interior and exterior of the building my staff found no discernable high watermark or other outward signs of recent flood water intrusion which validated this conclusion. The loss investigation included a confirming discussion with an adjacent neighbor, as well as a neighborhood canvass of the surrounding area and adjoining properties that failed to reveal any physical evidence of a general condition of flooding. A Research conducted through the National Flood Insurance Program claims data system showed no record of reported flood losses on or in the vicinity of Harbor Haven Street.

The physical evidence observed at the property confirmed that damage sustained to the interior first level drywall, baseboards and carpeting were the direct result of ponding, ground water penetration and seepage through an opening at the exterior foundation wall along the rear corner of the building, not flooding.

The Standard Flood Insurance Policy (SFIP) is a single peril policy providing coverage only when there is tangible evidence of direct physical changes, loss, or damage to insured property by or from flood. Coverage for the described cause of loss or damage is specifically excluded in the SFIP under Section V. Exclusions paragraph D., which reads in part:

EXHIBIT
G

Mike Farhat
June 15, 2016
Page 2

V. EXCLUSIONS

D.      We do not insure for direct physical loss caused directly or indirectly by any of the
following:

3.      Rain, snow, sleet, hail, or water spray;

4.      Water, moisture, mildew, or mold damage that results primarily from any condition:

5.      Water or waterborne material that:

c.      Seeps or leaks on or through insured property;

unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup,
sump pump discharge or overflow, or the seepage of water;

Additionally, foundation damage attributed to soil saturation and consolidation differential
movement or settlement, progressive deterioration, faulty or defective construction and any other
any pre-existing condition is specifically excluded by SFIP Section V. Exclusions, paragraphs C. and
D.

Based on all the information provided by the parties involved in this matter, FEMA concurs with
your insurance company's final decision and no further administrative review can be provided
through this appeal process. If you do not agree with the final decision reached by Texas Farmers,
please refer to the SFIP, Section VII. General Conditions, Paragraph R. The one-year period to file
suit against Texas Farmers, commences from the date they first denied all or any part of the claim,
and this one-year period is not and was not extended by this appeal process. In the event that you
choose to initiate litigation against Texas Farmers, please note that FEMA is not a proper party to
that proceeding pursuant to 44 C.F.R. §62.23(g).

Sincerely,

Donald Waters
Insurance Examiner
Federal Insurance and Mitigation Administration

cc:     Texas Farmers Insurance Company
        Adam D. Chilton

 **MOORING**

**INVOICE**

2110 113th Street
Grand Prairie, TX 75050          888-293-9963

BILL TO:
Mike Farhat
1060 Harbor Haven St.
Southlake, TX 76092

Invoice Number | 31377
Invoice Date | December 21, 2015
Job Number | 151103

TERMS | Due On Receipt
SALES REP | Randy Lee

Claim # 370014

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 1 | Emergency Services Per Scope of Work | | $6,152.22 |
| | MIKE_FARHAT_ES | | |
| 1 | Pack Out Services Per Scope of Work | | 7,446.68 |
| | MIKE_FARHAT_PO | | |
| Due Upon Receipt | | SUBTOTAL | 13,598.90 |

$13,598.90
PAY THIS AMOUNT

DIRECT ALL INQUIRIES TO:
Juli Mobley
888-293-9953
email: jmobley@mooringusa.com

MAKE ALL CHECKS PAYABLE TO:
Mooring Recovery Services, Inc.
2110 113th Street
Grand Prairie, TX 75050

EIN: 26-1642770          TACLA: 26661E

*THANK YOU FOR YOUR BUSINESS!*



EXHIBIT
H

 **MOORING**

2110 113th Street
Grand Prairie, TX 76050          888-293-9953

# INVOICE

BILL TO:
Mike Farhat
1060 Harbor Haven St.
Southlake, TX 76092

Invoice Number | 31377
Invoice Date | January 26, 2016
Job Number | 151103

TERMS | Due On Receipt
SALES REP | Randy Lee

### Claim # 370014

| QUANTITY | DESCRIPTION | UNIT P* | AMOUNT |
|---|---|---|---|
| 1 | Emergency Services Per Scope of Work | | $6,152.22 |
| | MIKE_FARHAT_ES | | |
| 1 | Pack Out Services Per Scope of Work | | 7,446.68 |
| | MIKE_FARHAT_PO | | |
| 1 | Payment Received 01/26/2016 | | (10,000.00) |

| Due Upon Receipt! | | SUBTOTAL | 3,598.90 |
|---|---|---|---|
| | | | $3,598.90 |
| | | | PAY THIS AMOUNT |

DIRECT ALL INQUIRIES TO:
Juli Mobley
888-293-9953
email: jmobley@mooringusa.com

MAKE ALL CHECKS PAYABLE TO:
Mooring Recovery Services, Inc.
2110 113th Street
Grand Prairie, TX 75050

EIN: 26-1642770          TACLA: 28651E

*THANK YOU FOR YOUR BUSINESS!*

From: Ashley Truex <atruex@mooringusa.com>
To: mfarhat55 <mfarhat55@aol.com>
Cc: Accounts Receivable <ar@mooringusa.com>; Randy Lee <rlee@mooringusa.com>
Subject: Re: Invoice 31377 for Mike Farhat - Emergency Services & Pack Out
Date: Mon, Jan 25, 2016 1:29 pm
Attachments: Invoice 31377_Farhat, Mike_ES&PO_122115.pdf (162K), MIKE_FARHAT_ES_Final Draft.pdf (144K),
MIKE_FARHAT_PO_Final Draft.pdf (118K), WNP_Farhat.pdf (626K)

Good afternoon Mr. Farhat,

Randy Lee requested that I resend you the attached invoice and scopes of work for the emergency services
and pack out services performed by Mooring. Please let us know when payment will be issued to Mooring for
the attached invoices. Thank you and have a great afternoon!

On Mon, Dec 21, 2015 at 6:02 PM, Ashley Truex <atruex@mooringusa.com> wrote:
Good afternoon Mr. Farhat,

Attached is the invoice and scopes of work for the emergency services and pack out performed by Mooring.
I've also included a copy of the signed work & direct pay authorization form. If you will provide your insurance
adjuster's email address I can forward these documents to them also. Please let us know when payment will
be issued to Mooring for the attached invoice. Thank you and have a great afternoon!

Best Regards,

**Ashley Truex**
*Collections Administrator*
Tel: 888-293-9953 (*24 hour Dispatch*)
Fax: 817-632-9286
Email: atruex@mooringusa.com



2110 113th St. Grand Prairie, TX 75050

Best Regards,

**Ashley Truex**
*Collections Administrator*
Tel: 888-293-9953 (*24 hour Dispatch*)
Fax: 817-632-9286
Email: atruex@mooringusa.com

**MOORING   Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

| | | | |
|---|---|---|---|
| Client: | Mike Farhat | Cellular: | (817) 291-8842 |
| Home: | 1060 Harbor Haven | | |
| | Southlake , TX 76092 | | |

Operator:   RLEE

| | | | |
|---|---|---|---|
| Estimator: | Randy Lee | Business: | (214) 532-9894 |
| Company: | Mooring Services | E-mail: | rlee@mooringusa.com |
| Business: | 2110 113th street | | |
| | Grand Prairie, TX | | |

| | | | | |
|---|---|---|---|---|
| Type of Estimate: | <NONE> | | | |
| Date Entered: | 12/18/2015 | Date Assigned: | 11/30/2015 | |
| Date Est. Completed: | 12/18/2015 | Date Job Completed: | 12/18/2015 | |

| | |
|---|---|
| Price List: | TXDF8X_DEC15 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | MIKE_FARHAT_PO |

Dear Valued Customer,
Please refer to the enclosed itemized estimate. The estimate contains our valuation of the emergency services for the reported loss and was prepared using reasonable and customary prices for your geographic area.

If any hidden, or additional damage, and/or damaged items, are discovered, we will review these with you to determine necessary steps immediately. Coverage for the hidden or additional damages and/or damaged items, would need to be determined, and may require an inspection/re-inspection by your insurance company.

If a mortgage company is included on your claim payment check, please contact the mortgage company to discuss how to handle the proceeds of this payment.

Thank you for allowing Mooring to serve your Emergency needs. Please contact me at the numbers listed above if you have any questions regarding this estimate or any other matter pertaining to your property.



**MOORING**

Mooring Recovery Services, Inc.

| | |
|---|---|
| 2110 113th St. | 15534 W. Hardy Rd., Suite 100 |
| Grand Prairie, TX 75050 | Houston, TX 77060 |
| Toll Free 888.293.9953 | Fax 469.733.1696 |

Appoint Date: *11-30-15*
MRS No.: _____
MRS Rep: *RANDY*

## WORK AND DIRECT PAY AUTHORIZATION

**CUSTOMER:** *MIKE FARNAT*                     Primary Phone *817-291-8841*
☑ Owner  ☐ Renter  ☐ Representative     Alternate Phone *817-291-8842*
**PROPERTY LOCATION:** *1060 HARBOR HAVEN*         City *SOUTHLAKE* . TX Zip *76092*
Billing & Insurance Information: Company/Address: *FARMERS - Colonial rClaims*
Agent / Adjuster: *LUKE CNEN  860-438-8481* Phone No. *800-356-6314* Fax _____

Customer authorizes Mooring Recovery Services, Inc. ("MRS") to perform the services at the Project Location ("Property") in accordance with the terms and conditions in this Work and Direct Pay Authorization Agreement ("Agreement"):

Customer authorizes MRS to commence the Work described below or in the Scope of Work ("Work") in the following Rooms / Areas: *BEDROOM, LIVING RM, BATHROOM, HALL, GARAGE STORAGE, CLOSET* ("Rooms")

☑ Work *PULL CARPET PAD + BASE IN BEDROOM - DRY CARPET*
*PULL BASE + ENSULATION ON OUTSIDE WALLS*
*PULL BASE IN ALL OTHER ROOMS*
*PACK OUT GARAGE STORAGE AREA*
*PACK OUT WINE CABINET*
*PACK OUT BEDROOM*
                    *CLAIM # FILE #*
                    *370014*

☐     See attached Scope of Work / Additional Charges

### TERMS OF AGREEMENT

Customer agrees to pay MRS for the Work in accordance with the price stated in the estimate, or if there is no estimate at the time of commencement of Work, then the charges for the Work shall be at the usual and customary rate and fees used by MRS at the time those services are rendered ("Price"). Estimates are not a guaranteed price and may be adjusted due to conditions or circumstances not known or considered in preparation of the estimate. MRS agrees to perform only the services set forth in the description of Work and only in the Rooms designated above or in the Scope of Work. Any additional services provided by MRS not included in description of Work or outside the Rooms specified shall be subject to additional charges in accordance with the usual and customary rates and fees charged by MRS.

By signing below, Customer directs its insurance carrier to pay directly to MRS (excluding Customer's name from the draft) any balance due for services, emergency or otherwise. Customer authorizes MRS to submit all invoices directly to Customer's insurance company or its representative or adjuster, where insurance coverage has been identified. Customer assigns to MRS that portion of the proceeds from Customer's insurance policy covering the loss or any damage to Customer's property, in the amount equal to charges for services rendered and/or to be rendered by MRS for the Work. Customer shall remain primarily and fully responsible for payment of all sums owed to MRS for any services provided and not paid by Customer's insurance. Customer agrees to make payment in accordance with this Agreement if Customer's insurance does not timely make payment.

Customer authorizes the Work and agrees to the terms referenced on both sides of Agreement which shall govern all labor, materials, rentals and services furnished by MRS to Customer including any subsequent services provided to Customer pertaining to the Property without further signature.

I have carefully reviewed and agree to the terms and conditions on the front and back of this Agreement.

SIGNATURE OF CUSTOMER: *[signature]*                     DATE: *11/30/2015*

**⊞MOORING** **Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

### MIKE_FARHAT_PO

#### Pack Out

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 1. Contents Evaluation and/or Supervisor/Admin - per hour | 36.00 HR | 0.00 | 43.40 | 128.90 | 1,691.30 |
| 2. Inventory, Packing, Boxing, and Moving charge - per hour | 52.50 HR | 0.00 | 29.16 | 126.30 | 1,657.20 |
| 3. Provide book box, packing paper & tape | 102.00 EA | 0.00 | 2.39 | 40.43 | 284.21 |
| 4. Provide dishpack box, packing paper & tape | 29.00 EA | 0.00 | 6.81 | 33.18 | 230.67 |
| 5. Cargo van and equipment - per day | 2.00 EA | 0.00 | 100.00 | 16.50 | 216.50 |
| 6. Moving van (17' - 20') and equipment - per day | 4.00 EA | 0.00 | 145.00 | 47.85 | 627.85 |

Totals: Pack Out                                                                              393.16          4,707.73

#### Storage

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 7. Off-site storage 3 vaults a day @ 3.50 per vault | 60.00 DA | 0.00 | 10.50 | 51.98 | 681.98 |

Totals: Storage                                                                              51.98           681.98

#### Move Back

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 8. Contents Evaluation and/or Supervisor/Admin - per hour | 18.00 HR | 0.00 | 43.40 | 64.45 | 845.65 |
| 9. Inventory, Packing, Boxing, and Moving charge - per hour | 25.00 HR | 0.00 | 29.16 | 60.14 | 789.14 |
| 10. Cargo van and equipment - per day | 1.00 EA | 0.00 | 100.00 | 8.25 | 108.25 |
| 11. Moving van (17' - 20') and equipment - per day | 2.00 EA | 0.00 | 145.00 | 23.93 | 313.93 |

Totals: Move Back                                                                            156.77          2,056.97

Line Item Totals: MIKE_FARHAT_PO                                                             601.91          7,446.68

**MOORING** Mooring

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

## Summary

| | | |
|---|---|---|
| Line Item Total | | 6,844.77 |
| Cleaning Matl Tax | | 34.37 |
| Subtotal | | 6,879.14 |
| Cleaning Total Tax | | 567.54 |
| Replacement Cost Value | | $7,446.68 |
| Net Claim | | $7,446.68 |

Randy Lee

# ▓MOORING  Mooring

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

| | | | |
|---|---|---|---|
| Client: | Mike Farhat | Cellular: | (817) 291-8842 |
| Home: | 1060 Harbor Haven | | |
| | Southlake, TX 76092 | | |

| | |
|---|---|
| Operator: | RLEE |

| | | | |
|---|---|---|---|
| Estimator: | Randy Lee | Business: | (214) 532-9894 |
| Company: | Mooring Services | E-mail: | rlee@mooringusa.com |
| Business: | 2110 113th street | | |
| | Grand Praire, TX | | |

| | | | |
|---|---|---|---|
| Type of Estimate: | <NONE> | | |
| Date Entered: | 12/18/2015 | Date Assigned: | 11/30/2015 |
| Date Est. Completed: | 12/18/2015 | Date Job Completed: | 12/14/2015 |

| | |
|---|---|
| Price List: | TXDFBX_DEC15 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | MIKE_FARHAT_ES |

Dear Valued Customer,
Please refer to the enclosed itemized estimate. The estimate contains our valuation of the emergency services for the reported
loss and was prepared using reasonable and customary prices for your geographic area.

If any hidden, or additional damage, and/or damaged items, are discovered, we will review these with you to determine
necessary steps immediately. Coverage for the hidden or additional damages and/or damaged items, would need to be
determined, and may require an inspection/re-inspection by your insurance company.

If a mortgage company is included on your claim payment check, please contact the mortgage company to discuss how to handle
the proceeds of this payment.

Thank you for allowing Mooring to serve your Emergency needs. Please contact me at the numbers listed above if you have any
questions regarding this estimate or any other matter pertaining to your property.

**Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

MIKE_FARHAT_ES

Main Level

**Closet**                                                          Height: 8'

216.00 SF Walls                        22.20 SF Ceiling
238.20 SF Walls & Ceiling              22.20 SF Floor
2.47 SY Flooring                       27.00 LF Floor Perimeter
27.00 LF Ceil. Perimeter



| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 1. Tear out wet carpet pad and bag for disposal | 22.20 SF | 0.39 | 0.00 | 0.11 | 8.77 |
| 2. Tear out wet non-salvageable carpet, cut & bag for disp. | 22.20 SF | 0.42 | 0.00 | 0.11 | 9.43 |
| 3. Tear out baseboard | 27.00 LF | 0.35 | 0.00 | 0.00 | 9.45 |
| 4. Tear out wet drywall, cleanup, bag for disposal | 11.70 SF | 0.72 | 0.00 | 0.15 | 8.57 |
| 5. Apply anti-microbial agent | 22.20 SF | 0.00 | 0.19 | 0.41 | 4.63 |

Totals: Closet                                                 0.78      40.85

**Bedroom**                                                         Height: 8'

398.67 SF Walls                        154.44 SF Ceiling
553.11 SF Walls & Ceiling              154.44 SF Floor
17.16 SY Flooring                      49.83 LF Floor Perimeter
49.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 6. Contents - move out then reset | 1.00 EA | 0.00 | 39.78 | 0.00 | 39.78 |
| 7. Tear out wet carpet pad and bag for disposal | 154.44 SF | 0.39 | 0.00 | 0.76 | 60.99 |
| 8. Tear out wet non-salvageable carpet, cut & bag for disp. | 154.44 SF | 0.42 | 0.00 | 0.76 | 65.62 |
| 9. Tear out baseboard | 49.83 LF | 0.35 | 0.00 | 0.00 | 17.44 |
| 10. Tear out wet drywall, cleanup, bag for disposal | 36.80 SF | 0.72 | 0.00 | 0.49 | 26.99 |
| 11. Apply anti-microbial agent | 154.44 SF | 0.00 | 0.19 | 2.83 | 32.17 |

Totals: Bedroom                                                4.84      242.99

MIKE_FARHAT_ES                                        12/21/2015        Page: 2

**MOORING** Mooring

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

## Recap by Category

| Items | Total | % |
|---|---|---|
| CONT: PACKING,HANDLING,STORAGE | 6,844.77 | 91.92% |
| Subtotal | 6,844.77 | 91.92% |
| Cleaning Matl Tax | 34.37 | 0.46% |
| Cleaning Total Tax | 567.54 | 7.62% |
| Total | 7,446.68 | 100.00% |

**Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com



**Bathroom**                                                                 Height: 8'

| | | |
|---|---|---|
| 292.05 SF Walls | 66.91 SF Ceiling | |
| 358.96 SF Walls & Ceiling | 66.91 SF Floor | |
| 7.43 SY Flooring | 36.51 LF Floor Perimeter | |
| 36.51 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 12. Apply anti-microbial agent | 66.91 SF | 0.00 | 0.19 | 1.23 | 13.94 |
| 13. Tear out wet drywall, cleanup, bag for disposal | 7.50 SF | 0.72 | 0.00 | 0.10 | 5.50 |
| 14. Tear out baseboard | 7.50 LF | 0.35 | 0.00 | 0.00 | 2.63 |
| Totals: Bathroom | | | | 1.33 | 22.07 |



**Living Room**                                                               Height: 8'

| | | |
|---|---|---|
| 836.12 SF Walls | 754.72 SF Ceiling | |
| 1,590.83 SF Walls & Ceiling | 754.72 SF Floor | |
| 83.86 SY Flooring | 102.31 LF Floor Perimeter | |
| 115.56 LF Ceil. Perimeter | | |

| Missing Wall - Goes to Floor | 9' 3" X 6' 8" | Opens into Exterior |
|---|---|---|
| Missing Wall - Goes to Floor | 4' X 6' 8" | Opens into Exterior |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 15. Tear out wet drywall, cleanup, bag, per LF - up to 2' tall | 23.50 LF | 2.57 | 0.00 | 0.62 | 61.02 |
| 16. Apply anti-microbial agent | 47.00 SF | 0.00 | 0.19 | 0.87 | 9.80 |
| 17. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 119.33 | 0.00 | 119.33 |
| 18. Tear out baseboard | 23.50 LF | 0.35 | 0.00 | 0.00 | 8.23 |
| Totals: Living Room | | | | 1.49 | 198.38 |



**MOORING**   Mooring

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

**Foyer/Entry**                                                              Height: 8'

170.67 SF Walls                          25.94 SF Ceiling
196.60 SF Walls & Ceiling                25.94 SF Floor
2.88 SY Flooring                         21.33 LF Floor Perimeter
21.33 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 19. Tear out baseboard | 21.33 LF | 0.35 | 0.00 | 0.00 | 7.47 |
| 20. Apply anti-microbial agent | 25.94 SF | 0.00 | 0.19 | 0.47 | 5.40 |
| 21. Tear out wet drywall, cleanup, bag, per LF - up to 2' tall | 21.33 LF | 2.57 | 0.00 | 0.56 | 55.38 |
| Totals: Foyer/Entry | | | | 1.03 | 68.25 |



**Under Stairs**                                                             Height: 8'

403.45 SF Walls                          59.88 SF Ceiling
463.32 SF Walls & Ceiling                59.93 SF Floor
6.66 SY Flooring                         50.43 LF Floor Perimeter
50.43 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 22. Tear out baseboard | 50.43 LF | 0.35 | 0.00 | 0.00 | 17.65 |
| 23. Apply anti-microbial agent | 59.93 SF | 0.00 | 0.19 | 1.10 | 12.49 |
| 24. Tear out wet drywall, cleanup, bag, per LF - up to 2' tall | 50.43 LF | 2.57 | 0.00 | 1.33 | 130.94 |
| Totals: Under Stairs | | | | 2.43 | 161.08 |



**Garage Storage**                                                           Height: 8'

502.67 SF Walls                          225.36 SF Ceiling
728.03 SF Walls & Ceiling                225.36 SF Floor
25.04 SY Flooring                        62.83 LF Floor Perimeter
62.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|

MIKE_FARHAT_ES                                          12/21/2015            Page: 4

**Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

### CONTINUED – Garage Storage

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 25. Tear out wet carpet pad and bag for disposal | 225.36 SF | 0.39 | 0.00 | 1.12 | 89.01 |
| 26. Tear out wet non-salvageable carpet, cut & bag for disp. | 225.36 SF | 0.42 | 0.00 | 1.12 | 95.77 |
| 27. Tear out baseboard | 62.83 LF | 0.35 | 0.00 | 0.00 | 21.99 |
| 28. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 119.33 | 0.00 | 119.33 |

| Totals: Garage Storage | | | | 2.24 | 326.10 |
|---|---|---|---|---|---|

| Total: Main Level | | | | 14.14 | 1,059.72 |
|---|---|---|---|---|---|

### Drying Equipment

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 29. Air mover (per 24 hour period) - No monitoring | 96.00 EA | 0.00 | 25.56 | 0.00 | 2,453.76 |
| 12 air movers a day for 8 days is 96 air movers | | | | | |
| 30. Dehumidifier (per 24 hour period) - Large - No monitoring | 34.00 EA | 0.00 | 77.61 | 0.00 | 2,638.74 |

| Totals: Drying Equipment | | | | 0.00 | 5,092.50 |
|---|---|---|---|---|---|

| Line Item Totals: MIKE_FARHAT_ES | | | | 14.14 | 6,152.22 |
|---|---|---|---|---|---|

### Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,819.62 | SF Walls | 1,309.45 | SF Ceiling | 4,129.06 | SF Walls and Ceiling |
| 1,309.50 | SF Floor | 145.50 | SY Flooring | 350.24 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 363.49 | LF Ceil. Perimeter |
| | | | | | |
| 1,309.50 | Floor Area | 1,412.24 | Total Area | 2,962.65 | Interior Wall Area |
| 2,158.15 | Exterior Wall Area | 249.61 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

MIKE_FARHAT_ES                                    12/21/2015          Page: 5

**Mooring**

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

## Summary

| | |
|---|---|
| Line Item Total | 6,138.08 |
| Cleaning Matl Tax | 0.94 |
| Material Sales Tax | 7.23 |
| | |
| Subtotal | 6,146.25 |
| Cleaning Total Tax | 5.97 |
| | |
| Replacement Cost Value | $6,152.22 |
| Net Claim | $6,152.22 |

Randy Leo

MIKE_FARHAT_BS                                12/21/2015        Page: 6

**MOORING** Mooring

2110 113th St.
Grand Prairie, TX 75050
Office 24hr tollfree: (888) 293-9953
http://www.mooringusa.com

## Recap by Category

| Items | Total | % |
|---|---|---|
| CONTENT MANIPULATION | 278.44 | 4.53% |
| GENERAL DEMOLITION | 695.62 | 11.31% |
| WATER EXTRACTION & REMEDIATION | 5,164.02 | 83.94% |
| Subtotal | 6,138.08 | 99.77% |
| Cleaning Matl Tax | 0.94 | 0.02% |
| Material Sales Tax | 7.23 | 0.12% |
| Cleaning Total Tax | 5.97 | 0.10% |
| Total | 6,152.22 | 100.00% |



**Mooring Recovery Services, Inc.**
2110 113th St.          15534 W. Hardy Rd., Suite 100
Grand Prairie, TX 75050          Houston, TX 77060
Toll Free 888.293.9953          Fax 469.733.1696

Appoint Date _11-30-15_
MRS No. _____
MRS Rep. _RANDY_

## WORK AND DIRECT PAY AUTHORIZATION

CUSTOMER: _Mike PARNAT_                    Primary Phone _817-291-8841_
    ☑ Owner  ☐ Renter  ☐ Representative      Alternate Phone _817-291-8842_
PROPERTY LOCATION: _1060 HARBOR HAVEN_  City _Sound Lake_ . TX  Zip _76092_
Billing & Insurance Information: Company/Address _FARMERS - Colonial CLAIMS_
Agent / Adjuster: _LUKE CNEN  866-438-8481_ Phone No. _800-356-6326_ Fax

Customer authorizes Mooring Recovery Services, Inc. ("MRS") to perform the services at the Project Location ("Property") in accordance with the terms and conditions in this Work and Direct Pay Authorization Agreement ("Agreement"):

Customer authorizes MRS to commence the Work described below or in the Scope of Work ("Work") in the following Rooms / Areas: _BEDROOM, LIVING RM, BATHROOM, HALL, GARAGE CL, RMS, CLOSET,_____ ("Rooms")

☑ Work _ALL CARPET PAD & BASE in BEDROOM - DRY CARPET_
_PULL BASE & INSULATION on outside WALLS_
_PULL BASE IN ALL other ROOMS._
_PACK OUT GARAGE STORAGE AREA_
_PACK OUT WING CABINET_
_PACK OUT BEDROOM_
                    _CLAIM # FILE #_
                    _370014_

☐   See attached Scope of Work / Additional Charges

### TERMS OF AGREEMENT

Customer agrees to pay MRS for the Work in accordance with the price stated in the estimate, or if there is no estimate at the time of commencement of Work, then the charges for the Work shall be at the usual and customary rate and fees used by MRS at the time those services are rendered ("Price"). Estimates are not a guaranteed price and may be adjusted due to conditions or circumstances not known or considered in preparation of the estimate. MRS agrees to perform only the services set forth in the description of Work and only in the Rooms designated above or in the Scope of Work. Any additional services provided by MRS not included in description of Work or outside the Rooms specified shall be subject to additional charges in accordance with the usual and customary rates and fees charged by MRS.

By signing below, Customer directs its insurance carrier to pay directly to MRS (excluding Customer's name from the draft) any balance due for services, emergency or otherwise. Customer authorizes MRS to submit all invoices directly to Customer's insurance company or its representative or adjuster, where insurance coverage has been identified. Customer assigns to MRS that portion of the proceeds from Customer's insurance policy covering the loss or any damage to Customer's property, in the amount equal to charges for services rendered and/or to be rendered by MRS for the Work. Customer shall remain primarily and fully responsible for payment of all sums owed to MRS for any services provided and not paid by Customer's insurance. Customer agrees to make payment in accordance with this Agreement if Customer's insurance does not timely make payment.

Customer authorizes the Work and agrees to the terms references on both sides of Agreement which shall govern all labor, materials, rentals and services furnished by MRS to Customer including any subsequent services provided to Customer pertaining to the Property without further signature.

I have carefully reviewed and agree to the terms and conditions on the front and back of this Agreement.

SIGNATURE OF CUSTOMER: _____  DATE: _11/30/2015_